THE ORO MINING AND MILLING COMPANY, APPELLANT, v. KAISER, APPELLEE.

1. PRINCIPAL AND AGENT—MANAGER OF MINING COMPANY.

The manager of a mining company is the person to whom is delegated the control and management of its property so far as operating the same is concerned. In the absence of defined powers, those incident to the office embrace that of employing necessary labor, developing the mine, etc., purchasing necessary tools and supplies, mining and selling ore, etc., and binding the corporation for bills necessarily contracted in the prosecution of the work. Parties dealing with the corporation, unless notified of restrictions and limitations, have a right to act upon the presumption that all the general powers pertaining to the office are possessed by the manager.

2. SAME—NOTICE.

A principal is bound to know what his agent does in the course of his employment, particularly when he accepts the benefit of what is done by the agent.

3. SAME.

If an officer of a corporation is allowed to exercise general authority in respect to its business or a particular branch of it for a considerable

time, it is bound by his acts in the same manner as if authority had been expressly granted.

*Appeal from the District Court of Summit County.*

KAISER (appellee) brought suit against James P. Welch, J. H. Thompson, the appellant (a corporation), J. N. Casady and J. J. Brown, on claim of his own and of fifteen others assigned to him, for work and labor on the " Lucky Lode," claiming a lien on such mining property and also judgments against the parties respectively.

Appellant was in the possession of, owning and operating a group of mines called the " Oro " mines, also owning and operating a mill in the immediate vicinity for the reduction of the ores, and had been some time prior to the creation of the claims upon which suit was brought.

J. N. Casady and J. J. Brown, residing in Iowa, were the owners of the Lucky Lode. James P. Welch was the manager of The Oro Mining and Milling Company and its properties and the only known and responsible officer in connection with such properties. About March 1, 1890, Welch, the manager of the Oro mining properties, in order to supply more ore to the mill and reduction works, went to Iowa and secured a purchase option, and a lease, in his own name, from Casady and Brown of the Lucky Lode. He paid $1,000, purchase price was about $20,000; balance of the payments were to be made at subsequent times, and in default of any of the payments property was to revert; deeds and papers of conveyance were made and placed in escrow, to be delivered to Welch on compliance by him with the terms of this contract, Welch to have immediate possession of the property. Immediately after his return, Welch took possession of the property, commenced mining and producing ores from it, had a wagon road built for the transportation of ore, connecting it with the Oro Mine, and a shute made by means of which the ore was delivered at the mill of the Oro Company. The same mining foreman, whose business it was to employ labor, had charge of the mining on both mines, and miners and em-

ployees were changed by the foreman from one mine to the other to suit his convenience or the exigencies of the occasion. In June or July, Welch was removed as manager and left the country and Thompson succeeded him as manager of the Oro Company. At the time of Welch's retirement there was due laborers for work on the Lucky Mine some $1,700 to $2,000. Welch having made default in his payments under the contract with Casady and Brown, the property reverted. After Thompson became manager work was not prosecuted upon the Lucky Lode, and debts contracted by Welch in the prosecution of work on the lode were repudiated by him, as not being the debts of the company but individual debts of Welch. Welch left the country, as claimed by the company, indebted to it in the sum of eight or nine thousand dollars. No service was had upon him; he was not accessible at the time of the trial and his evidence was not obtained. The case was tried by a jury, resulting in a money judgment against the Oro Company for $2,044.29 and in favor of the other defendants,—consequently no judgment for a lien upon the property.

Several errors are assigned, a part on the admitting and rejecting of testimony; the principal errors relied upon being that the court erred in granting the judgment because the contract of Welch and his operations upon the Lucky Mine were his own individually and not those of the defendant, the Oro Company. The giving of the following instruction by the court is assigned as error:

"If you find from the evidence that the Lucky Mine was being worked individually and solely for the benefit and profit of James P. Welch, notwithstanding that fact, if you further find from the evidence that he was the general manager of The Oro Mining and Milling Company and employed men as such general manager, in the name of the company, although he may have set them to work on the Lucky Mine and in and about the performance of his own individual business, still, the company would be liable to the men so employed, unless the men themselves when employed, or while render-

ing the services, knew that they were not working for the company as a matter of fact, but were rendering the services for Mr. Welch individually. The general manager of a mining company has the power to employ men and has the power to direct where those men shall work, and it is immaterial, so far as the company is concerned, where they are directed to work; he may set them to work at business separate and apart from the business of the company, if such work is in the line of the business of the company, if the men are not aware such is the fact, but perform their services, believing they are rendering their services for the company; and therefore, if you find from the evidence that he was general manager and so employed the men in the name of the company, and that the men honestly without notice believed that they were performing their services for the company, the company is bound by that employment and cannot escape liability by saying their general manager perpetrated a fraud or entered into a contract not in their behalf, but for his individual benefit.

"It is the principal's duty to know what the agent or general manager does, and they are liable for all acts of their agent performed within the general scope of his employment as manager."

Messrs. PATTISON, EDSALL & HOBSON and Mr. E. E. WHITTED, for appellant.

Mr. C. A. WILKIN, for appellee.

REED, J., delivered the opinion of the court.

The errors assigned upon the admission of testimony do not appear to be urged or to be relied upon in argument. The ruling of the court may be liable to technical criticism, but no serious errors sufficient to warrant extended examination or the reversal of the judgment occurred. The supposed lack of evidence to establish the respective claims of the different

laborers will not be regarded. It clearly appears that subordinates under Welch were required to and did keep time books, and such time books were put in evidence and proof of the respective claims satisfactory to the jury was made, nor were the claims controverted or any attempt made to reduce them by proof of payments or otherwise. In the trial of the case, as in the arguments of counsel, the defense was put upon the broad ground, that under the facts as shown by the evidence, Welch, the general manager, could not render his company liable for any debts contracted by him in prosecuting work upon the Lucky Lode. All questions in regard to Welch's purchase or contract to purchase and his lease of the mine on behalf of his company may be eliminated from the discussion. It cannot be successfully claimed that Welch, as general manager of the affairs of the company, had by virtue of his office authority to bind his company by purchase or lease of real property, either in his own name or the name of the company, without special authority. In determining the rights of the laborers employed it is unimportant in whom the title to the property was, or whether purchased or leased by the Oro Company or Welch, or whether by either. Other considerations and facts must control.

Welch was the undisputed manager of the company, was the only responsible party in charge of the business of the corporation. The business of the company was the mining and reduction of ores. For the latter business it had its own mills in the immediate vicinity of its mines, was taking ores from its mines and reducing them at the mills. Both lines of business were under the control of Welch as manager. The mining of ores, their hauling and delivery, the employment of men in each and every department, and the furnishing of necessary supplies, were clearly incidental to and within his authority. No question can arise on this proposition, and within these lines and the scope of his authority, debts contracted by him would be the debts of the company. In his capacity of manager of the mill it would, certainly, be his duty to supply it with ore if available.

These duties and his authority in the premises are so elementary and so well established, no authority is needed in their support. Apparently in the discharge of his duty as manager, for the purpose of getting more ore for the mill, he commenced mining ore upon the Lucky Lode, constructed a road and built a shute, employed men, took a portion of the men and tools from the company's mine and transferred them to the Lucky, the ore was taken to and reduced at the company's mill, and shipped and sold to smelters mixed with the ore from the company's mine and, as far as shown, the proceeds applied to the wants of the company. It is shown by the evidence that on several occasions Welch, when asked by laborers who was responsible for the payment of wages on the Lucky Lode, informed the parties that they need have no fears, that it was just the same as before, and that the Oro Company was responsible and stood behind the whole thing and paid the wages. The evidence shows that time books for labor upon the Oro Mine and the Lucky Mine were kept separate and distinct; that payments of both, when made, were made in the same manner by the checks of Welch as manager, and that in two or three instances the amounts due individuals for labor and supplies on the Lucky Lode and for the same on the Oro Mine were consolidated, and one check made embracing both payments.

Anderson, Law Dic., defines a manager to be " The person who really has the most general control over the affairs of a corporation, and who has knowledge of all its business and property, and who can act in emergencies on his own responsibility. He may be considered as the principal officer."

" The very term implies a general supervision of the affairs of the corporation in all its departments." *Spangler v. Butterfield*, 6 Colo. 356 ; *Mining Co. v. Lawson*, 57 Wis. 404.

" He must be considered the principal officer to whom is delegated the entire control and management of the corporate property as far as operating the same is concerned. * * * In the absence of defined powers, the powers incident to the office and employment, would embrace that of employing the

necessary labor, opening, developing and protecting the mine, the purchasing * * * of necessary tools and supplies and mining and selling the ore, with power to bind the corporation for bills necessarily contracted in the prosecution of the work. * * * Other parties in dealing with the corporation have a right to assume, and act upon the presumption, that all the powers pertaining to the office generally are possessed by the individual in question, unless notified of restrictions and limitations." *R. E. Lee S. M. Co. v. Smelting Co.*, 16 Colo. 118.

It is contended that the acts of Welch were unknown to and a fraud upon his company. Admitting it, how could his employees be affected by it? The employment was directly in the line of his authority; employees were not required nor expected to investigate the title and ascertain the tenure by which the property was held, and had they known the holding was in the name of Welch, such information alone would not affect the liability. The knowledge of the general manager is imputed to his corporation. The knowledge of a manager is, in respect to others, the knowledge of the company.

In *Lit. Pitts. M. Co. v. Little Chief M. Co.*, 11 Colo. 223, it is said: " A principal is bound to know what his agent does in the course of his employment, and particularly so when the profits of the conduct of such agent go in the pockets of the principal." This is in harmony with the general law of the subject. Had employees known the title to the property and right to mine was in Welch and not in the corporation, they might reasonably suppose from the course of business it was by design and with full knowledge. They were never informed that it was a distinct and separate enterprise. As far as shown by the evidence the only information was obtained directly from Welch, to the effect that the work was being prosecuted by the company and it was responsible for it. These statements made by him were, in legal effect, those of the company. It is not shown whether the mining upon the Lucky was profitable or disastrous,—presumably the latter. Imputing, as the law does, the knowl-

edge of the manager to the company, we find it operating the mine for some months, and according to its theory occupying the equivocal position of being able to affirm the acts of the agent if profits resulted, and to disaffirm if disastrous. Such positions are not tolerated in law. It was only after Welch's connection with the company ceased, and he had left the country that his successors attempted to repudiate his transactions in the premises.

In *Union M. Co. v. R. M. N. B'k*, 2 Colo. 248, the leading case upon this branch of law in this state, it was said: " If an officer of a corporation is allowed to exercise general authority in respect to the business of the corporation, or a particular branch of it for a considerable time, in other words, if he is held out to the world as having authority in the premises, the corporation is bound by his acts in the same manner as if the authority were expressly granted."

The same doctrine is declared in *Com. M. Ins. Co. v. Union Mut. Ins. Co.*, 19 How. 322 ; *Peyton v. St. Thomas Hos.*, 3 C. & P. 363 ; *C. B. & Q. R. R. Co. v. Coleman*, 18 Ill. 298 ; *St. L. A. & Chi. R. R. Co. v. Dalby*, 19 Ill. 375 ; *Daugherty v. Hunter*, 54 Pa. St. 382 ; *Allegheny City v. McClurkin*, 14 Pa. St. 81 ; *Ardesco Oil Co. v. Gilson*, 64 Pa. St. 150.

This case is readily distinguishable from the case of *Victoria Mining Co. v. Fraser*, 2 Colo. App. 14, relied upon by counsel for the reversal of the judgment. In this, the debts were contracted clearly within the well defined authority of the manager in the line of his duty, which was the prosecution of the business of the company. In that, the purchasing of a reduction plant of machinery for the company was not in the defined limits of his authority, and in order to bind the company for debts so contracted, proof of special authority, aside from that incident to his position of general agent or manager, must be shown.

The instruction (No. 13) has been ably and vigorously assailed by counsel in argument. A careful and patient examination of it in the light of the authorities and the principles of law stated above fail to show it faulty or erroneous; it ap-

pears to be a plain, clear and intelligible statement of the well established principles of law controlling the case.

The questions of fact and of the knowledge of the employees were submitted to the jury in plain and unmistakable language and were found against the appellant, and such findings appear to have been warranted by the evidence. The law given, as applicable to such a finding of facts, as shown by the foregoing discussion and authorities cited, was an enunciation of well established principles.

The judgment must be affirmed.

*Affirmed.*