LEE COUSINS v. B. F. WHITE et al., Appellants.

Division One, November 30, 1912.

1. **EJECTMENT: Trial Before Court: Instruction.** The fact that the case was tried before the court sitting as a jury does not change the rules of law governing the giving or refusing of instructions in actions at law. If the instruction should have been given had the case been submitted to a jury, it was error for the court sitting as a jury to refuse it.

2. ————: **Color of Title: Pointing out Lines at Time of Purchase.** Where there was evidence that at the time the owner of land sold it to defendant he had been in the exclusive possession of a certain five acres adjoining the land described in the deed, and he pointed out to her the lines of the land she was buying

and the fences inclosing it, which included said five acres, and she thereafter went into possession believing she had bought said five acres and remained in possession for twelve or fourteen years before suit was brought, there was such color of title as authorized an instruction declaring her continuous and exclusive adverse possession for ten years, claiming title thereto, ripened into a title in her by limitations.

3. **QUIETING TITLE: Judgment in Appellate Court: Law Case: Tried Before Judge.** The Supreme Court will not hold in a law case that upon all the evidence the findings and judgment should have been for the appealing defendant. The facts in an action at law are triable before a jury, who are the sole judges of the credibility of the witnesses and the weight to be given to their testimony. And the rule is the same where the law case is tried by the court sitting as a jury, and it is the same in a case to quiet title wherein the whole issue is the title to the land and the right to possession, under a claim of adverse possession and limitations, for then the issue is one at law. The rules which permit the appellate court to try an equity case *de novo* and to render such decree as justice and right may require, dc not govern in a law case.

Appeal from Oregon Circuit Court.—*Hon. W. N. Evans,* Judge.

REVERSED AND REMANDED.

*J. N. Burroughs* for appellants.

(1) Color of title is not essential to adverse possession. Mere possession under claim of ownership is sufficient. Mather v. Walsh, 107 Mo. 121; Quick v. Rube, 164 Mo. 408. (2) It is not necessary that color of title be created by deed or other instrument of writing. It may be created by an act *in pais* without writing. Rannels v. Rannels, 52 Mo. 108. (3) Title by adverse possession may originate in a parol agreement in a case where actual and not constructive occupancy is claimed. Hamilton v. Boggess, 63 Mo. 233. (4) Acquiescence in a division line may be established by the acts, conduct and possession of litigants. Stumpe v. Kopp, 201 Mo. 422; Dee v. Nachbar, 207 Mo. 697; Smith v. McCorkle, 105 Mo. 135.

*S. M. Meeks* and *George M. Miley* for respondent.

(1) Defendant took Huffstedler's possession with the express understanding that it was not adverse to plaintiff's grantors. (2) Defendants' possession, in its inception, not having been adverse to plaintiff's grantors, this situation would continue of the same nature, and no adverse user could arise until a distinct and positive assertion of a right hostile to the owner, and brought home to him, transforming a subordinate and friendly holding into one of an opposite nature, and exclusive and independent in its character. Lumber Co. v. Jewell, 200 Mo. 716; Wilkerson v. Thompson, 82 Mo. 317; Budd v. Collins, 69 Mo. 129. (3) The possession from end to end in warp and woof must be hostile—begin hostile and continue hostile. McCune v. Goodwillie, 204 Mo. 339. (4) A trespasser, a mere squatter, in possession of land under no claim of ownership or title of any degree or character admitting himself holding by wrong and not by right, cannot acquire title by limitation at all. Feller v. Lee, 225 Mo. 327; Hunter v. Wethington, 205 Mo. 284. (5) The burden is on defendant to show that the character of her holding became different and when, if ever, her possession first became adverse to plaintiff and his grantors. Hunnewell v. Adams, 153 Mo. 443.

WOODSON, J.—This suit was instituted in the circuit court of Oregon county, by the plaintiff against the defendants, to quiet the title to the southwest quarter of section twenty-one, township twenty-two, range five, under old Sec. 650, R. S. 1899.

The defendants answered, denying any claim to said quarter section, except to about five acres lying in the southwest corner thereof, described as follows:

Beginning at the southwest corner of section twenty-one, running thence north to a point where the public road intersects the section line between sections

twenty and twenty-one, the same being a distance of five hundred and fifty-four feet; thence in a southeasterly direction along said public road to and intersecting the section line between sections twenty-one and twenty-eight; thence west a distance of six hundred feet to the point of beginning.

Said answer was as follows:

"Now come defendants in the above entitled cause and for their answer to the petition of plaintiff, deny each and every allegation in said petition contained.

"Defendants further answering say that they are in possession of and have within their enclosure a portion of the land described in plaintiff's petition; that they and their grantors have for twenty-six years, last past, maintained an enclosure around said portion of land; have been in the open, continued, exclusive and adverse possession of the same for the whole of said period of twenty-six years, claiming title thereto and have made valuable improvements thereon; that the portion of said land so held by defendants and their grantors more particularly described is as follows:  [Then follows the description as above set forth.]

"Defendants further say by reason of the open, notorious, exclusive and adverse possession of the above described land under claim of ownership by them and their grantors for a period of more than ten years as aforesaid, they are vested with the full title to said land, both legal and equitable.

"Wherefore, defendants pray that the court may by its judgment and decree adjudge that the defendants are the owners of the above described land; that defendants be vested with full title thereto, both legal and equitable, by the judgment and decree of the court; and that plaintiff be divested of any title or interest he may hold to the same, and that the same may be vested in these defendants, and for such other

orders and judgments as to the court may appear meet and proper.''

At the trial all defenses, except the Statutes of Limitations, were abandoned.

The following facts are undisputed:

The record title to the land is in the plaintiff, he having acquired it from one O'Neal, who through mesne conveyances acquired it from William H. Taylor, about the year 1880.

The defendant Margaret White ·purchased lands adjoining that in controversy from Amos Huffstedler, in the year 1894. She testified that at the time she purchased said lands she purchased all the lands which were within the Huffstedler enclosure, which it is conceded included this five acres. She testified that she had Huffstedler point out the lines to her, which included the land sued for; that he told her that all the lands in that country were sold as farms, and that this farm included all the lands inclosed by the fences which he pointed out to her; that he told her that he had been in the possession of this five acres for thirteen years, and had cultivated it all that time; that she took possession of said five acres along with the other land inclosed by the same fence, and had the actual, exclusive, adverse and notorious possession of it from that time down to July, 1909, about sixteen years, when this suit was instituted, cultivating it each and every year, and receiving all the rents, issues and profits thereof during all that time; and that during all that time she claimed title thereto, which was not questioned nor was her possession ever disturbed, except upon one occasion, about a year after she purchased the land, namely, in the year 1894, and that was by William H. Taylor, who at that time claimed to have had the record title thereto; that upon that occasion Taylor made claim to the five acres, and took possession thereof, and set some posts near the present controverted line; that she so vigorously pro-

tested against his claim of title and wrongful posses-
sion, that he pulled up and left the place, and never
again claimed title thereto or disturbed her possession
thereafter, which was about twelve of fourteen years
prior to the institution of this suit.

Amos Huffstedler testified for plaintiff, but did
not contradict the testimony of Mrs. White, except in
this manner: He testified that at the time he made
the contract of sale with Mrs. White, he stated to Mr.
Tribble, the attorney who drew the deed, in the pres-
ence of Mrs. White, that there was some agricultural
land that cornered down in the field (this five acres)
he was not selling to defendant.

Mrs. White testified that she never heard Huff-
stedler make that statement to Tribble, but that after
she had contracted for the land and "had made the
payment" thereon Huffstedler, for the first time, said
to her that there was some agricultural land that cor-
nered down in the field, and that he assured her that
she would never be bothered about it, that he had held
it for thirteen years, had cultivated it all those years
and had never been bothered about it, and that he
deemed the title to the same to be safe for her.

(The record is not clear upon this point, but from
this remark I suppose the land was purchased upon
the installment plan, and that the payment referred to
was the first payment made under the contract of pur-
chase.)

Huffstedler also testified that he held the actual,
exclusive and notorious possession of said five acres
of land for thirteen years prior to making the deed to
Mrs. White, and cultivated it all that time, and re-
ceived all the issues, rents and profits thereof, but that
he never claimed the land adversely.

The record is silent as to the reason and as to the
conditions that existed under which he took possession
of said five acres, or why it was enclosed with his
lands.

Mrs. White was recalled and testified that she took possession of all the land in question, under the deed, believing that she had a good title to all of it as Huffstedler had told her she had.

The only evidence introduced tending to contradict the evidence of Mrs. White to the effect that she claimed the five acres of land adversely under color of title, was that of the plaintiff and his attorney, S. M. Meeks, regarding a conversation which took place in the latter's office a few days prior to the institution of this suit.

Plaintiff testified as follows:

"I had a conversation with Mrs. White about this piece of land in Mr. Meeks's office, after I bought it from Michael; she came in and said she would buy it from me, if I would sell it, and I told her I would, and she asked me how much I wanted, and I said seventy-five dollars an acre; she said, 'That is too much.' She asked me how much I gave and I said $9.25 per acre, and she said she would give me twice as much as it cost me. She said there was something like five acres and she would give me $100 for it.

"Cross-Examination:

"Don't know that she said who was the owner of that land; nothing was said about the ownership of it; the best I remember she came in and asked me if I would sell that piece of land; I didn't talk with her much."

The following was Mr. Meeks's testimony:

"I heard the conversation between Mr. Cousins and Mrs. White; I couldn't tell all of it; Mrs. White came in, I think Mrs. White and I came in together, and went in and sat down and Mr. Cousins came in directly from another room; they were talking about this land, and he told her that he would draw a line from that section corner to Mr. Shaver's fence and set a price and give or take, if I remember right, and she told

him she wouldn't do it, she had none to sell; she asked him what he gave for it, and he said $9.25, and she told him she would give him twice that for what was in the field and considered that a reasonable offer, or something to that effect, she said, 'You say there is 5 acres?' and she would give him $20 or $100 for what was there; that was a few days before this suit was filed.

"Cross-Examination:

"Mrs. White came down to my office to see me about this land; she understood that Cousins was making a claim to it. She came and talked to me about it when Bill Payne was making some claim to it, about a dozen years ago. I don't remember whether I advised her she could hold that land; I think Mr. Kenner was mixed up in it and Mr. Payne and Mrs. White; it was a three-cornered controversy. I heard that Mr. Payne had got it and some posts; I might have advised her she could take those posts out, I don't remember whether I advised her to that effect or whether I told her that the land belonged to her by right of possession.

"Re-direct Examination:

"I had no knowledge of the facts, and if I gave her any advice it was upon her own statements."

William Miller testified for defendants as follows:

"I have known the land in controversy for twenty-nine years, I would say; I remember Bill Payne claiming it; I don't recollect how long it has been, probably a dozen years ago; I heard him making some claims to that corner down in Mrs. White's field there; I heard him say something about it in the court here to Judge Evans; something about wanting possession of it; I don't know what steps were taken, but I unstood Judge Evans to state they would hold it by Statute of Limitations. I had put his poles in there to

build a fence and then he didn't build it; I don't know what year that was.

"Q.  You never knew or heard of him making any further claims to that land?  A.  That is the last I heard said about it.

"Cross-Examination:

"I don't know what he claimed; I don't know what kind of matter or proceeding it was I heard in court; I don't know exactly—I heard Payne name something about wanting possession of this land, or something of the kind, to Judge Evans.  It was after Payne was out of office here, ten or twelve years ago; I couldn't tell how long it has been.  I don't know what the general knowledge and understanding was out in this neighborhood, as to whether this corner out of that quarter section run down into the field; I don't know what the general knowledge, but I knew it; I don't know how the general opinion is about it being part of that White farm, but I would consider it a part of the farm; it belonged to the field."

Joseph Rizenour, being introduced on the part of defendants testified in substance as follows:

"I am the tenant cultivating the White farm, and rented it from Mr. White, through my son; it included the piece of land in controversy here.  I have known this place about twenty-nine years; this land in dispute has been held under the enclosure of the White farm ever since I knew the farm; the fence has been set back a little this year, a new fence put in there this year, it may have been set out a little, but it follows the road.  For the last five years I have known Mrs. White to have control of it; as far as I know Mrs. White's renters have occupied it from the time she bought it on down.  The new fence was set up against the old fence in places, and out six feet north of it in places."

Mrs. White upon recall further testified that:

"Mr. Huffstedler told me when we were trying to make the deal that all the land was sold in farms; that is the way he told it; he didn't tell me anything about this piece until he told me about the lines; that about telling me before Mr. Tribble—I wasn't there and don't know anything about that. He said I could hold the land all right, that he had held it thirteen years and never been bothered. Mr. Nettleton bought it in 1882.

"Q. About this conversation that took place in Mr. Meeks' office—state why you went? A. The reason I went there I heard Lee Cousins bought it and I heard that he was going to take forcible possession of it, and when I went up to Mr. Meeks's office and asked him what I should do, and he said he wouldn't do that. Before that the surveyor came to the house and I thought it was the county surveyor, and instead of that it was Mr. Haskell. And then I came down and Lee came while I was there, and he said he was going to survey and I said I didn't want any trouble. I said, 'How much did you pay for the land?' And I offered him $100 for his claim and he said he would have to have $75 per acre, and was going to law to get it. I made that offer to get the matter settled without a suit.

"Q. About how long after you bought this land was it that Mr. Payne made this claim? A. When he put them holes in was about three years; I owned it I guess eight or nine months when they had it surveyed. Mr. Huffstedler told me there was nothing to it; I claimed up to the fence. When he went to show me the line fence and the corner he said that was a piece of this land got from another corner in there; this was known as railroad land; Nettleton bought it in 1882.

"Cross-Examination:

. "Mr. Meeks didn't tell me he was Cousin's attorney the day I was in there; he said he wouldn't represent either of us on account of being a friend of both of us. I didn't tell Mr. Meeks in that conversation that Huffstedler told me he wasn't selling this land, because he didn't tell me so."

Plaintiff admitted that the land in dispute had been in cultivation for about twenty-nine years.

Whereupon defendants rest.

Thereupon, plaintiff recalled S. M. Meeks and inquired whether Mrs. White said that Amos Huffstedler told her he was selling the land in controversy when he made the deed. Witness said: ".She stated he told her there was a corner of this other section run down in to it. She didn't state when he told her that."

Defendants asked the following instructions, numbered one and two.

"1. If the defendant, Margaret White, understood and believed at the time she purchased the farm adjoining the land in question that said land went with said farm and was a part of the same; that she went into possession of the disputed land, maintained an enclosure around the same and continued in the open, adverse and exclusive possession of the same for a period of ten years, claiming title thereto, then the finding should be for defendants, although defendant may have afterwards learned that the title to said lands was in dispute.

"2. If the defendant Margaret White had the land in dispute within her enclosure for a period of more than ten years consecutively prior to the filing of this suit and during all that time held the open, exclusive and adverse possession of the same, claiming title thereto, then such possession has ripened into a title in the defendants; although she may have known that the record title to such land was in other

persons and that her title to said land was in dispute."

The court gave the first instruction, but refused the second, to which action of the court the defendants duly excepted.

The plaintiff asked no instruction.

The court sitting without the assistance of a jury found the issues for the plaintiff; and the defendants, after moving unsuccessfully for a new trial, appealed the cause to this court.

I. There are but two errors assigned: first, that the court erred in refusing to give instruction numbered two requested by defendants; and, second, that upon the whole record the findings and judgment were erroneous, and should have been for the defendants, and not for the plaintiff.

We will dispose of those questions in the order stated.

As to the first: If this case had been tried as an action at law, which unquestionably it was, as the only defense was the Statute of Limitations (Lee v. Conran, 213 Mo. 404) instruction numbered two should have been given, for the reason that it correctly announces the principle of law governing the Statute of Limitations pleaded in the answer. The only excuse offered by counsel for respondent for the action of the court in refusing said instruction is, that there was no evidence introduced tending to show that the defendants were claiming adversely under *color of title*.

Counsel for respondent have either overlooked some of the evidence, or have misconceived its import. Mrs. White, one of the defendants, testified that she purchased the land from Amos Huffstedler, and that he pointed out the lines to her which inclosed this five-acre tract; also that after she had entered into the contract of purchase and had made the first payment, he for the first time, mentioned this five acres, and then only remarked that he had been in the uninter-

rupted possession thereof for thirteen years, and had never been disturbed therein, and that he was satisfied that she had a perfect title thereto. And Huffstedler does not contradict her in that regard except what he says he told Tribble in her presence regarding this five acres; and it should be observed that he did not state that she heard, or had the opportunity of hearing, what he said upon that occasion. She testified that if he made any such statement to Tribble she never heard it.

But be that true or false, it cannot be said she was not in the actual exclusive, notorious and adverse possession of this land for some twelve or fourteen years before the institution of this suit, nor do I think it can seriously be contended but what she was claiming under color of title when we consider her testimony, in connection with that of Meeks, respondent's attorney, Huffstedler, a witness for respondent, and that of William Miller and Joseph Rizenour, witnesses for appellants. In fact, their evidence shows conclusively that she was claiming title thereto, and actually dispossessed Payne, the real owner, a year or so after she purchased the land from Huffstedler.

Moreover, the uncontradicted evidence shows that she was claiming title to the land all this time, not only by dispossessing Payne, but there was some kind of a proceeding had in court touching this land, in which it was shown that she was then claiming the title thereto; and that the remarks of Judge Evans made during the trial of that case shows that he not only knew she was claiming the title, but also that he thought her claim was well founded. She also consulted Mr. Meeks, the attorney for respondent, about this claim, and while he is not clear as to just what his advice was, nevertheless it shows she was claiming title thereto.

So under this evidence we are satisfied that there was an abundance of evidence tending to show that

defendants were, during all the years they were in possession of the land, claiming adversely under color of title.

For the reasons stated we are of the opinion that the instruction should have been given. And the fact that the case was tried before the court without a jury does not change the rules of law governing the giving and refusing instructions in actions at law. [Crossett v. Ferrill, 209 Mo. 704, l. c. 707.] We are, therefore, of the opinion that the court erred in refusing to give instruction numbered two.

II. This brings us to the consideration of the second error assigned by counsel for defendants, namely, that upon all the evidence the findings and judgment of the court should have been for the appellants.

If this had been a case in equity, there might have been much force in this contention, for the reason that then we would have had the right to review and weigh the evidence, and render such judgment or decree here as justice and equity might demand. [Gibbs v. Haughowout, 207 Mo. 384.] But this being an action at law, we have no such authority.

The facts in such a case are triable before a jury, who are the sole judges of the credibility of the witnesses, and the weight to be given to their testimony.

Because of the error before mentioned, the judgment is reversed and the cause remanded to be proceeded with in conformity to the views herein expressed. All concur.