W. M. ROBINSON, Appellant, v. MOARK-NEMO CONSOLIDATED MINING COMPANY, A. E. BENDELARI AND FRED COOK, Respondents.

Springfield Court of Appeals, February 24, 1914.

1, TRESPASS: Mines and Mining: Damages: Evidence in Mitigation. In an action for trespass, evidence that tailings from the mine of defendant thrown upon plaintiff's adjoining land were valuable, had been abandoned by the mine owner and could be sold by the adjoining owner or removed by him at no expense, was admissible in mitigation of damages but not as justifying the trespass.

2. ———: ———: Measure of Damages. In an action for trespass for throwing tailings from a mine upon the land of an adjoining property owner, the usual measure of damages is the difference in the value of the land with and without the tailings thereon; but where the cost of removal is less than such difference such cost of removal is the proper measure of damages.

3. ———: By Mining Corporation: Managers Jointly Liable with Corporation. Where a mining corporation had for two years been casting the tailings from its mine upon the land of an adjoining property owner, the managers of the corporation were jointly liable with the corporation for such trespass and the damages resulting.

4. CORPORATIONS: Manager: Term Defined. The manager of a corporation may be considered as the principal officer thereof and is the person who really has most general control over the affairs of the corporation and who has knowledge of all of its business and property, and who, in emergency, can act on his own responsibility.

5. **TRESPASS**: Assenting and Directing: Joint Liability. One who directs or assents to a trespass is liable equally with him who does the act which constitutes the trespass.

Appeal from Jasper County Circuit Court, Division No. Two.—*Hon. David E. Blair*, Judge.

REVERSED AND REMANDED. CERTIFIED TO SUPREME COURT.

*McReynolds & Halliburton*, for appellant.

(1) The court erred in permitting defendants over plaintiff's objection to prove a contract of Reynolds with Moark-Nemo Company for sale of tailings off the ground, as it did not tend to prove or disprove the issues between plaintiff and defendants. (2) Defendants Cook and Bendelari being the managers of the Moark-Nemo Mining Company and controlling its mining operations, the trespass of said company could only be committed by its servants, and employees, and all of them being under the control of Cook and Bendelari, they were vice-principals and participants in the trespass on plaintiff's land and liable for the trespass. McNeely v. Hunton, 30 Mo. 334; Walters v. Hamilton, 75 Mo. App. 257; Welch v. Stewart, 31 Mo. App. 376; Cooley on Torts, 533-534; Cooper v. Johnson, 81 Mo. 483; Cannifax v. Chapman, 7 Mo. 175; Dyer v. Tyrrell, 142 Mo. App. 467. (3) In trespass principals as well as agents, are joint trespassers and the principal is liable for the acts of the agent performed within the line of his duty, whether the particular act was or was not directly authorized. Humbur v. Scott, 5 Mo. App. 507; Dorvell v. Taylor, 2 Mo. App. 329; Murphy v. Wilson, 44 Mo. 313; Meade v. Railway Co., 68 Mo. App. 100. (4) In civil actions for damages for trespass the intent of the party committing the trespass is immaterial. Dyer v. Tyrrell, 142 Mo. App. 467. (5) The measure of damages in trespass on Real Estate is ordinarily the difference in the value of the land immediately before and after the

completion of the injury unless the cost of restoring the property to its former condition is less than such difference in value. Ivie v. McMunnigal, 66 Mo. App. 437; Tegeler et al. v. Kansas City, et al., 95 Mo. App. 165. (6) The measure of damages for depositing refuse on the ground of another is the cost of removal, but no larger amount than the value of lot can be recovered. Barringer & Adams, Law of Mines & Mining in U. S. page 608.

*McIndoe & Thurman,* for respondent.

(1) Appellant insists that there should have been a finding against defendants Cook and Bendelari. An agent is not liable for a non-feasance of negligece. It is only where the agent has been guilty of active negligence, that is, by some act of misfeasance, that he can be made to answer to third parties. O'Niel v. Young, 58 Mo. App. 634; Harriman v. Stowe, 57 Mo. 98; Steinhouser v. Spraul, 114 Mo. 551. (2) Mere omission of duty is not sufficient. Buis v. Cook, 60 Mo. 393; Sanford v. Franklin County, 6 Mo. App. 42; O'Niel v. Young, 58 Mo. 634. (3) The appellate court cannot say that the trial court should have found otherwise. Questions of fact, when submitted to a court without a jury and found by the court have the same binding effect as the verdict of a jury. Tipton v. Christopher, 135 Mo. App. 623; Butts v. Gunby et al., 138 Mo. App. 28. (4) Where real estate is permanently injured by the wrongful act of another the measure of damages is the difference between the market value immediately before the injury occurred and the value after the injury is complete. St. Louis v. Bambrick, 149 Mo. 560; Martin v. Railroad, 47 Mo. App. 452; Authenreith v. Railroad, 36 Mo. App. 254; Tegler v. Kansas City, 95 Mo. App. 162. (5) In a question of damages it is proper for the defendant to show in mitigation that the property of the plaintiff is enhanced in value. Porter v. Railroad, 33 Mo. 128.

FARRINGTON, J.—Plaintiff filed his petition in the circuit court of Jasper county alleging that the defendant, Moark-Nemo Consolidated Mining Company (hereinafter referred to as "the company") is a corporation and that he is the owner of a tract of land, comprising about two acres, adjoining land on which the company was engaged in mining and cleaning zinc and lead ore. The petition, after alleging the above facts, continues as follows:

"That the defendants A. E. Bendelari, Fred Cook and Charles Phelps are the agents, servants and employees in charge of said mine and directing and controlling the mining operations thereon; that said defendants Moark-Nemo Consolidated Mining Company and said Bendelari, Cook and Phelps have been mining upon the said land for a period of more than two years and that during all the said period the said defendants have wilfully and intentionally and against the protest of the plaintiff, run, dumped and placed all of the refuse from the said mine, upon the land of plaintiff, so that the whole of plaintiff's said land is covered up by said refuse and tailings, and that notwithstanding the fact that this plaintiff has forbidden the said defendants to further trespass upon his said land, they have intentionally and wilfully continued the said trespassing and are at this time engaged in such continuous trespassing upon the plaintiff's said land; that the tailings and refuse from the said mine placed upon the plaintiff's said land is piled up to the height of about one hundred feet, by reason of which the plaintiff is deprived entirely of the use of his said land and is prevented from mining the same; that the said trespass has so continued until all of plaintiff's use of the said land has been destroyed and the cost and expense to plaintiff of removing the said tailings amount to a large sum of money, to-wit: A sum in excess of five thousand dollars; that notwithstanding the plaintiff's said protest and the said continuous

trespassing, defendants are now engaged in continuing their said piling of tailings upon the plaintiff's said land and are threatening to continue piling their refuse on the plaintiff's said land and will, unless restrained and enjoined by the order of the court, continue to deprive the plaintiff entirely of the use of his said land.

"Plaintiff says that his land aforesaid is mining land and is of great value for mining purposes, but that it has been entirely destroyed for such use and cannot be so used until said tailings are removed from the said land, for all of which trespass the plaintiff says that he is damaged in the sum of ten thousand dollars.

"Wherefore, the premises considered, plaintiff prays that an injunction issue from this court perpetually enjoining and restraining the said defendants from piling the tailings and refuse from the said mine on the plaintiff's ground, and from further trespassing upon the plaintiff's said ground, and that the court ascertain and determine the amount of the plaintiff's said damages and that the plaintiff have judgment for said damages in the sum of ten thousand dollars."

The answer of the defendant company was a general denial, and a plea by way of mitigation that the tailing had been abandoned by the company and had a value of five hundred dollars. The defendants Bendelari and Cook answered by a general denial. Plaintiff filed a reply to the plea of mitigation in the company's answer.

The court, sitting as a trier of the facts, found the issues in favor of the plaintiff and against the company and assessed damages in the sum of two hundred and fifty dollars, but found the issues in favor of defendants Bendelari and Cook and judgment was rendered in their favor.

In an opinion heretofore filed in this cause, we affirmed the entire action of the trial court. Appellant (the plaintiff) filed a motion for a rehearing, and after

careful consideration we have concluded that the trial court committed error in its finding for the defendants Bendelari and Cook and in entering judgment in their favor. The original opinion is therefore withdrawn and this filed in its stead.

As to appellant's assignment of error to the effect that the court under the law and the evidence allowed an insufficient amount as damages, it is sufficient to say that both plaintiff and defendants were allowed great latitude in the introduction of testimony tending to throw some light on the question of the market value of the land before and after the tailings were placed there. Each also introduced evidence as to the cost of removing the tailings from plaintiff's land. After a careful reading of the record, we are unwilling to hold that the trial judge, as trier of the facts, committed error in the amount of the allowance made.

The company in its answer pleaded, and we think was properly allowed to show, that the tailings could be removed from plaintiff's land at little or no expense to him; in other words, that a contractor would agree to buy the tailings and remove them from the ground and pay something for them, and that as the company had abandoned the tailings, the plaintiff could have them removed without any substantial damage to the real estate.

The usual measure of damages in a case of this kind is the difference in the value of the land with and without the tailings thereon, but where the cost of removal is less than such difference, such cost of removal is the proper measure of damages.

The testimony showing the value of the tailings on the land would not be competent to justify the trespass, but on the question as to what it would cost to restore the land to its original condition by removing the tailings such evidence would certainly be proper. [Smith v. Kansas City, 128 Mo. 23, 30 S. W. 314.] And aside from the question of removal, the following au-

thorities uphold the rule that such evidence is admissible under proper pleadings to mitigate the actual damage to the realty. [Mize v. Glenn, 38 Mo. App. 98; Clay v. Board, 85 Mo. App. 237; Porter v. North Missouri R. Co., 33 Mo. 128; Lackland v. North Missouri R. C., 34 Mo. 1. c. 273; Burtraw v. Clark (Mich.) 61 N. W. 552.]

We hold that as to the judgment against the company for two hundred and fifty dollars, there was a correct finding of a trespass committed and that the sum fixed by the trial judge was not inadequate. Indeed, the defendant company is not complaining as to the correctness of the finding nor as to the amount fixed as it took no appeal.

The serious question in this case concerns the action of the court in making a finding and entering a judgment for the defendants Bendelari and Cook under the uncontroverted facts and the law governing the case. The evidence connecting these two defendants with the defendant company and thus with the trespass may be summarized as follows: The manner in which the trespass was committed was by allowing the tailings from the company's mine to be run over from the company's land onto plaintiff's land, across the line about 165 feet, which represented the width of the pile. It was 225 feet in length, and forty to fifty feet in height at some places, sloping down to the ground so that the average height of the pile was about twenty-five feet, and a considerable portion of plaintiff's land was therefore covered and rendered unfit for use. Practically all the tailings from this mining plant during a period of some two years were cast upon plaintiff's land. The machinery of defendants' mill was so constructed and operated by those having charge of the mining operations as to necessarily and deliberately pile the tailings on plaintiff's land. John Weaver testified for the plaintiff that defendants Bendelari and Cook were the managers of the Moark-

Nemo, "were in charge and were there;" that he no-
tified them several times in behalf of Judge Robinson
to quit piling tailing on this land and that they con-
tinued thereafter to throw their tailings over there.
Cook testified that he and Bendelari were the man-
agers of the defendant company and admitted that
Weaver informed him that Judge Robinson did not
like for the company to pile tailings on his land, and
said he told Weaver, "We have an option on it," and
that at that time he did not know Judge Robinson
owned the land. He did not recall receiving a letter
from Judge Robinson giving him notice to stop tres-
passing. He testified that one Funk had charge of the
mine, and that he (Cook) was manager and looked
after the business of the company and that Funk re-
ported to him. He testified that the tailings were
started out toward plaintiff's land, but that he (Cook)
did not select the place where they were to be put, and
that the elevators were not built on plaintiff's land.
Bendelari in his testimony does not deny that he was
a manager but states that he was familiar with the
fact that prior to the time the tailings were placed on
plaintiff's land one Parker had given an option on it,
and his testimony shows that he was familiar with the
value of the land at that time. He does say: "We
began placing tailings on it in 1908 or 1909," and in
testifying as to the option which he had taken on
plaintiff's land from Parker, he said: "I had a shaft
down on the Moark-Nemo and was drifting toward it."
The plaintiff testified that after he found that tailings
were being put on his land he wrote to Mr. Cook and
Mr. Bendelari, and said as a witness that he "went and
told Cook and Bendelari who were running the mine."
Witness Funk for the defendants testified that he was
superintendent of the defendant company, and that he
"had pretty much general charge of the workings dur-
ing the entire operation of the plant." The evidence
shows that the defendant company was insolvent prior

to the trial in the circuit court. The defendants Bendelari and Cook make no showing whatever that they were ignorant of the wrong that was being perpetrated by the company which they were managing, nor do they undertake to justify the trespass.

Upon this state of facts, we think the trial court erred in rendering a judgment in favor of defendants Bendelari and Cook.

The definitions of "Manager of Corporation" given in Vol. 5, Words & Phrases, page 4319, are as follows: "The manager is the person who really has the most general control over the affairs of a corporation, and who has knowledge of all its business and property, and who can act, in emergencies, on his own responsibility. He may be considered as the principal officer. The very term implies a general superivsion of the affairs of the corporation in all its departments. [Oro Mining & Milling Co. v. Kaiser, 35 Pac. 677, 678, 4 Colo. App. 219 (citing Spangler v. Butterfield, 6 Colo. 356; Wheeler & Wilson Mfg. Co. v. Lawson, 57 Wis. 400, 404, 15 N. W. 398.)]" " 'Manager,' as applies to an officer of a corporation, implies the idea that the management of the affairs of the company have been committed to him, so that one dealing with a person so held out, before the company can be held liable for his acts, need not show affirmatively that it had authorized them. [Carrigan v. Port Crescent Imp. Co., 34 Pac. 148, 6 Wash. 590.]" " 'Manager,' as applied to an officer of a corporation, conveys the idea that to the one thus named has been committed the management of the affairs of the company, and one dealing with a person so held out may assume that his acts are authorized. [Saunders v. United States Marble Co., 65 Pac. 784, 25 Wash. 475.]" Thompson in his work on Corporations, (2d ed.) Vol. 2, Sec. 1576, quotes from a Georgia decision as follows: "The term 'manager,' as applied to a private corporation, indicates one who has the general direction and control of its affairs, and

when used by one, in connection with the seal, imports authority to sign in behalf of the corporation. The word 'manager' implies agency, control, and presumptively sufficient authority to bind a corporation in a case in which the corporation was an actual party." In 26 Cyc. 123, "manager" is defined as one who has the conduct or direction of anything.

From the undisputed evidence herein, inclusive of the fact that defendants Bendelari and Cook were the managers of the defendant company, and the finding of the trial judge that the company committed the trespass, we have become convinced that the managers, having knowledge of the continuing trespass, were joint tortfeasors, and under the law should be held jointly with the corporation for damages.

Appellant cites the case of McGinnis v. Railway Co., 200 Mo. 347, 98 S. W. 590, 9 L. R. A. (N. S.) 880; Barton v. City of Odessa, 109 Mo. App. 76, 82 S. W. 1119; The New Orleans & N. R. Co. v. Jopes, 142 U. S. 18, 35 L. ed. 919; Doremus v. Root (Wash.), 63 Pac. 572; Stevick v. Railway Co. (Wash.), 81 Pac. 999; and insists that under the law declared therein the judgment in the case at bar holding the defendant company and releasing the defendant managers is a monstrosity. Upon an examination of those cases it is found that our case is different in that the agent of the corporation in those cases was the only person who could have actually committed the wrong for which the corporation and the agent were jointly held, whereas in our case the tailings could have been and were so far as the evidence shows actually placed on plaintiff's land by the hands of other workmen and agents of the defendant company than the managers Bendelari and Cook. The theory on which we hold the defendants Bendelari and Cook is that in their position as managers—conducting the operations of the company with knowledge of the wrong that was being committed and having control of the workmen who actually partici-

pated in the commission of the wrong—although requested to have the corporation cease such operations, failed to act. This is sufficient to show that they were assenting, countenancing, and by their inaction, approving, the trespass, which under the law of this State is sufficient to hold them as principals for the tort committed. It was said in the case of McNeeley v. Huntoon, 30 Mo. 332, 334: "This instructions erroneously assumes that the defendant could not be a trespasser without an actual participation in the act of seizing and removing the property from the owner's possession. It is hardly necessary to say that such is not the law, and that he who directs or assents to a trespass is liable equally with him who does the act which constitutes the trespass. If the defendant caused or directed the horses to be levied on and sold, he was a trespasser, notwithstanding he may not actually have taken them from plaintiff's possession, or aided in doing so." The general rule in regard to trespass is that all who direct the commission of a trespass, or wrongfully contribute to its commission, or assent to its commission, are equally liable to the injured. [Holliday v. Jackson, 21 Mo. App. l. c. 667, and cases cited; see, also, McMannus v. Lee, 43 Mo. 206; Faust v. Pope, 132 Mo. App. 287, 111 S. W. 878; Dyer v. Tyrrell, 142 Mo. App. 467, 127 S. W. 114.] In the case of Cooper v. Johnson, 81 Mo. 483, it is held that any person who is present at the commission of a trespass, encouraging or inciting the same by words, gestures, looks or signs, or who, in any way, or by any means countenances or approves the same, is, in law, deemed to be an aider and abettor, and liable as a principal.

Our search for reported decisions on the precise question presented here was almost fruitless.

It is unquestionably the law that one who participates in the commission of a trespass is liable as a principal, and the question before us is, Did the conduct of the defendants Bendelari and Cook make them

participants in the trespass which the trier of the facts found was committed by the defendant corporation. It is not claimed that they actually—with their own hands—placed tailings on plaintiff's land, but that they nevertheless participated in the trespass by directing the management of the company that was doing it and assenting to such acts after they had knowledge that the wrong was being committed, which wrong under the evidence must have continued over an extensive period of time. It was not a single, individual tort; it was a continuing one. No one could be about the mine and not see the trespass going on.

The leading case on this subject is that of Nunnelly v. Southern Iron Co., 94 Tenn. 397, 28 L. R. A. 421, where the facts bearing on the trespass and the relationship of the parties are such as to make it a parallel case to this. We approve the following statement found in the opinion in that case: "To permit the agent of a corporation, in carrying on its business, to inflict wrong and injuries upon others, and then shield himself from liability behind his vicarious character, would often both sanction and encourage the perpetration of flagrant and wanton injuries by agents of insolvent and irresponsible corporations." As stated in the notes following the report of that case in the L. R. A., the question presented is one of the least developed branches of the law of corporations. The doctrine of the Nunnelly case is approved by the Supreme Court of Michigan in the case of Wines v. Crosby & Co., 39 L. R. A. (N. S.) 901, wherein it is held that the managing officer of a corporation which is engaged in the manufacture for general consumption of an article dangerous to use is personally liable for injury to a consumer by its use, if he knows of its dangerous character and actively promotes its manufacture and sale. There, the president of the corporation, directing, managing and conducting the affairs of the company, was held for the tort committed when knowledge was

brought to him of the dangerous character of the article by which the plaintiff in that case was injured. Applying this principle to our case, when the managers of the corporation knew that under their direction, management and control, the corporation was committing a wrong by throwing its tailings on plaintiff's land, and continued to perpetrate the wrong, they should be held as joint tortfeasors with the corporation on the same principle that the president of the corporation in the case last above cited was held.

In the case of O'Neil v. Young, 58 Mo. App. 628, it is held that a servant is only responsible to third persons for active negligence or misfeasance while acting in the scope of his employment, and that therefore the managing officer of a corporation is not personally liable to one of its employees who at his direction uses an unsafe appliance furnished by the corporation unless he was aware of the unsafe condition of the appliance at the time.

In the case of Favorite v. Cottrill, 62 Mo. App. 119, it is held that when a trespass has been committed by a corporation, the corporation and the agent under whose direction it acted are jointly liable therefor.

In the case of Patterson v. Minnesota Mfg. Co. (Minn.), 4 L. R. S. 745, 751, in discussing the liability of a director of a corporation who assents to a tort being committed, the following language is used: "If a director knew that a violation of law was being, or about to be, committed, and made no objection when duty required him to object, and when he had the opportunity of doing so, this would amount to 'assent.'"

The doctrine herein announced may be found in the following authorities: Smith v. Utley, 92 Wis. 133, 35 L. R. A. 620; Sweet v. Montpelier Sav. Bank & T. Co. (Kan.), 77 Pac. 538; Peck v. Cooper Ill. 192, 54 Am. Rep. 231; Cameron v. Kenyon-Connell Com. Co. (Mont.), 44 L. R. A. 508; Davenport v. Newton (Vt.), 42 Atl. 1087; Thompson on Corps. (2 ed.), Vol.

5, Sec. 5459; Wood on Nuisances, Sec. 824; Mechem on Agency, Sec. 182; Beach on Priv. Corps., Vol. 1, Sec. 266.

The only case we have been able to find holding contrary to the rule herein announced is that of Bath v. Caton, 37 Mich. 199. But one of the authorities cited in the opinion in that case on this question is available to us, which is the case of Brown v. Lent, 20 Vt. 529, which held that the manager of a contracting concern blasting rock would not be liable for a blast improperly set off, it being shown in the opinion that he was absent at the time of the blast and the only wrong complained of was one individual blast; it was not a continuing wrong brought to his attention which he permitted. We have also an English case (Nicholson v. Mounsey and Symes, 15 East, 383) which held that the captain of a ship who was in his cabin and not on deck directing the actual maneuvers of the vessel would not be held personally for a collision, one of the subordinate officers of the ship being on deck and in charge of the course the vessel should take. Here, again, we have no continuing wrong, nor any knowledge that a wrong was being committed. The doctrine announced in the case of Bath v. Caton, supra, was to all intents and purposes overruled by the court that decided it in the Wines case, supra.

Common justice and common sense demand that where those in charge and control of the management of a corporation direct it along paths of wrongdoing, they should be held accountable by law to those who suffer damage as a consequence. This doctrine will prevent many wrongs and have a salutary influence in bringing about the lawful and orderly management of corporations.

We must therefore hold, upon the finding that the wrong was done and the uncontroverted testimony that the managers knew of the continuing trespass, that their failure to stop the wrongful operation of

the mine which they were managing, conducting and directing, at least amounted to an assent and approval and a countenancing of the wrongful acts. This brings them within the rule as to joint tortfeasors, and they can be held—and, on such a showing, should be held—jointly with the corporation. Following the practice of the Supreme Court in the case of Gracey v. St. Louis, 213 Mo. l. c. 401, 111 S. W. 1159, the judgment is reversed and the cause remanded for a new trial. *Sturgis, J.*, concurs. *Robertson, P. J.*, dissents.

## DISSENTING OPINION.

ROBERTSON, P. J.—In the trial of this case no declarations of law were asked or given; neither were there any objections to testimony that are urged here. We held in our original opinion that this being the situation the position of the plaintiff here resolved itself into the contention that the court should have directed a verdict in his behalf, and this, we held, under the facts in this case, could not be done. I am yet of the opinion that we were correct in that holding. [Stoepler v. Silberberg, 220 Mo. 258, 269, 119 S. W. 418; Cousins v. White, 246 Mo. 296, 309, 151 S. W. 737; Mineral Land Co. v. Ross, 135 Mo. 101, 107, 36 S. W. 216; Gannon v. Gas Light Co., 145 Mo. 502, 517, 46 S. W. 968, 47 S. W. 907; Dyer v. Tyrell, 142 Mo. App. 467, 472, 127 S. W. 114; Dolan v. Gas Light Co., 145 Mo. 550, 46 S. W. 1133; Dyer v. Cowden, 168 Mo. App. 649, 154 S. W. 156; Howard v. Hurst, 156 Mo. App. 205, 137 S. W. 1; Crawford v. Stayton, 131 Mo. App. 263, 110 S. W. 665; Link v. Jackson, 158 Mo. App. 63, 92, 139 S. W. 588; Dalton v. Poplar Bluff, 173 Mo. 39, 72 S. W. 1068; First State Bank v. Hammond, 124 Mo. App. 177, 101 S. W. 677; McCrosky v. Murray, 142 Mo. App. 133, 125 S. W. 226; Hugumin v. Hinds, 97 Mo. App. 346, 71 S. W. 479; Kingsbury v. Joseph,

94 Mo. App. 298, 68 S. W. 93; Dodd v. Guiseffi, 100 Mo. App. 311, 73 S. W. 304; Hunter v. Wethington, 205 Mo. 284, 103 S. W. 543; Johnson v. Grayson, 230 Mo. 380, 394, 130 S. W. 673.]

In the case of Hill v. Dillon, 161 S. W. 881, recently decided by this court, the burden was on the defendant, as it is here on the plaintiff, to prove to the satisfaction of the jury, or the court sitting as a jury, a given state of facts which was denied, thereby creating issues of fact, which it was the exclusive province of the jury, or the court sitting as a jury, to decide, and we there held that this court should not reverse and remand on that ground, citing other decisions of this court to the same effect.

In the case at bar it was incumbent upon the plaintiff to prove the material allegations of his petition, which were denied by these defendants' answer; that is, that he was the owner of the land at the time of the alleged trespass and that the defendants, Bendelari and Cook, had the immediate personal supervision of the acts of the defendant corporation, of which plaintiff complains, and that they did, with a principal's authority, direct and control the piling of the tailings upon the land in controversy, or that they were possessed of such authority from the corporation, and being so invested that their failure to prevent it should be held to be misfeasance upon their part. It was incumbent on the plaintiff, I think, to prove the actual authority of these defendants to direct in this matter, or that their conduct, if any, in this behalf, was ratified or acquiesced in by the corporation. It was the province of the trial court to decide these questions. The plaintiff testified that he was the owner of the land, not giving the time when he became such owner, and the defendants referred to the land as the Robinson land; but none of the witnesses testified as to when he became the owner thereof, and, under the authorities, it was not the imperative duty of the court

to believe any of this testimony. One of the defendants testified that he or his company at one time had an option on the land from one Parker and leaves the inference that by reason thereof he had, or supposed he had, the right to pile tailings upon this land. Either of the above facts, in my opinion, justified the court in refusing to render judgment against Cook and Bendelari. In any event, it was sufficient testimony to place it beyond the power of this court to hold that the trial court should have entered judgment against these defendants.

Deeming the opinion of the majority in conflict with the decisions of the Supreme Court, the St. Louis and the Kansas City Courts of Appeal, above cited, this case must of necessity be certified to the Supreme Court for final determination.

## [MOTION FOR REHEARING OVERRULED, CERTIFIED TO SUPREME COURT.]

PER CURIAM.—Respondents' motion for a rehearing is overruled. However, upon the request of ROBERTSON, P. J., contained in a dissenting opinion this day filed, that this cause be certified to the Supreme Court because the majority opinion is by him deemed in conflict with decisions of the Supreme Court, the St. Louis and Kansas City Courts of Appeal referred to in his dissenting opinion, it is accordingly so ordered, pursuant to sec. 6 of the Amendment of 1884 to article VI of the Constitution.