LAW REPORTING COMPANY, Respondent, v. ELWOOD GRAIN COMPANY, Appellant.

Kansas City Court of Appeals, January 11, 1909.

1. CORPORATIONS: Agent's Authority: Interstate Commerce Commission: Judicial Notice. An action of a buying and selling agent of a grain corporation in ordering a copy of the report of the proceedings before the Interstate Commerce Commission relating to railroad companies and grain and elevator companies is held not to be in excess of a power reasonably necessary and proper to carry into effect his main power to buy and sell grain, since courts take judicial notice that the said commission has much to do with the charges of common carriers in interstate commerce which charges are matters of importance to a grain buying and selling agent.

2. ————: ————: Correspondence: Negligence. A buying and selling agent of a grain corporation had also charge of the opening of the correspondence and referring it to someone else or disposing of it in some manner. Held, a stranger who had correspondence with the company had a right to rely upon a letter signed by the corporation by such agent and the duty devolved on the company to see that the agent kept within the bounds of his instructions.

Appeal from Buchanan Circuit Court.—*Hon. Chesley A. Mosman,* Judge.

AFFIRMED.

*Duncan & Utz,* for appellant, filed argument.

*Spencer & Landis* for respondent.

(1) If an agent have direct authority to bind his principal in a particular transaction, this direct authority will carry with it by implication all powers that are suitably and reasonably necessary to accomplish the intended purpose, though no incidental powers are mentioned between the principal and the agent. (2) A man may be bound by unauthorized and unratified acts of a pretended agent when his conduct induces some one to trust such pretended agent's authority in matters which would entail a loss on the trusting party, if the one represented were permitted to deny responsibility. (3) Where the agent has the management of a business for his principal, and such agent acts beyond his authority, the principal he assumes to represent will be bound when the person dealt with had the right, in view of all facts known to him, to believe he was dealing with an actual agent about a matter within the scope of the agent's authority, and said person dealt with, did believe, and relied upon his having such authority. Hackett v. Van Frank, 105 Mo. App. 384; 10 Cyclopedia of Law and Procedure, pp. 936, 937, 938, 940.

BROADDUS, P. J.—The plaintiff is a corporation organized under the laws of the State of New York. It is engaged in the business of copying and reporting proceedings and testimony of the Interstate Commerce Commission and other work of similar character. The defendant is a corporation of the State of Missouri and

operates a grain elevator near the City of St. Joseph and has an office and transacts business in that city.

The plaintiff claims that in January, 1907, it contracted with the defendant to furnish to it the testimony and report in the hearing before the Interstate Commerce Commission in the investigation of the relation of railroad companies and grain and elevator companies, by which defendant agreed to pay to plaintiff for said work the sum of $486.90; and that it did furnish all of said testimony and delivered the same to defendant at its office in St. Joseph.

It was shown that plaintiff sent out a printed circular to the different grain and elevator companies calling their attention to its business, one of which was addressed to and received by defendant. After some correspondence, the following was addressed to the plaintiff:

"Jan. 1st.

"Law Reporting Company,
      67 Wall St.,
            New York City.

Dear Sir: We acknowledge receipt of your letter of the 29th ultimo.

You do not say in your letter how many folios there are in the grain investigation. Judging from your letter of December 17th, the amount cannot exceed 7,500 copies. If the number does not exceed 7,500, please send us a copy of the investigation as per terms outlined in your letter.

Yours truly,
            ELWOOD GRAIN CO.
                  By H. ————."

In pursuance of the order contained in the foregoing letter, the plaintiff sent to defendant by express a copy of the investigation mentioned, which defendant

refused to accept on the ground that the party making the order had no authority to do so.

It was shown that the initial "H" attached to the order stood for W. H. Harroun, who was not an officer of the defendant company. It was shown, however, that he was the agent of the defendant and did all its business in buying and selling grain. It was shown that Harroun was the proper party to receive and open all the correspondence addressed to the defendant, and whose duty it was to refer it to some one else or to dispose of it in some other manner; but a witness, one of defendant's officers, stated that he had no authority to make contracts for supplies for the office. Neither the articles of incorporation nor its by-laws were introduced in evidence. All the witnesses for defendant stated that the sole purpose of the organization was buying and selling grain. However, it was shown that as an incident to its business it used an elevator for the storage and transfer of grain.

The judgment was for plaintiff, from which defendant appealed.

The contention of defendant is that Harroun had no authority to make the contract; therefore, the only question before us is one of agency. Mechem on Agency, section 282, states the authority of an agent so far as it may affect the rights of third persons consists:

"First, and primarily, of the powers directly and intentionally conferred by the voluntary act of the principal.

"Second, of those incidental powers which are reasonably necessary and proper to carry into effect the main powers conferred and which are not known to be prohibited.

"Third, of those powers which usage and custom have added to the main powers, and which the parties are to be deemed to have had in contemplation at the time of the creation of the agency, and which are not known to have been forbidden.

"Fourth, of all such other powers as the principal has, by his direct act or by negligent omission or acquiescence, caused or permitted persons dealing with the agent reasonably to believe that the principal had conferred.

"Fifth, of all those other powers whose exercise by the agent, the principal has subsequently, with full knowledge of the facts, ratified and confirmed."

In the first place, we are convinced that Harroun when he made the contract in question was exercising a power which was "reasonably necessary and proper to carry into effect" the main power conferred upon him as the sole agent of the corporation to buy and sell grain. It was important for him to be thoroughly informed as to all questions pertaining to the rates charged by carriers for the transportation of grain, as such rates would affect the price to be paid for it. It is a well-known fact that the price of the commodity varies in different localities. Its price depends upon the distance from the great centers of trade, the rates of transportation varying according to the distance.

The court takes judicial notice that the Interstate Commerce Commission under the law of its creation has much to do with the charges made by carriers for all kinds of products coming within the class known as interstate commerce. We can well understand that an agent intrusted by his principal with the sole power of buying and selling grain could obtain much information that would be useful to his principal in his business from the reports and proceedings of the Interstate Commerce Commission. The more complete the agent's knowledge of the business, the more efficient he would be as such, and anything that would increase his means of information materially and necessarily pertained to his authority.

And defendant is bound by the act of its agent on another ground. Defendant, in intrusting Harroun exclusively with the duty of receiving and opening all

correspondence addressed to the defendant by its corporate name and to determine in his discretion to what department or agent of the company the matters to which such correspondence related, so far as third persons were concerned estopped itself from asserting that his act was without authority. If Harroun, when he assumed to contract in the premises for his principal, went beyond his delegated powers, his act, nevertheless, bound his principal, on the ground that it had by its negligence and omission of duty permitted third persons to reasonably conclude that he was acting within the scope of the powers conferred. It was the duty of the defendant, in the exercise of ordinary care, to have known in what manner its agent was handling its correspondence. The plaintiff, when it received his answer to its correspondence addressed to the corporation, the letter signed in the name of the corporation, had the right to assume it was written by one authorized to write it; otherwise, no one would be safe in dealing with a corporation by letter, for how is he to know who has and who has not the required authority to act.

"Where a party has so acted, that another is led to believe in the right of a third person to act as his agent, if any loss occurs by reason of any act of the supposed agent, the loss must fall on him whose conduct caused the mistake." [Rice v. Grooffmann, 56 Mo. 434.] And, "The scope of an agency is to be determined not alone from what the principal may have told the agent to do, but from what he knows or ought to know, in the exercise of ordinary care and prudence, the agent is doing in the premises." [Kingsley v. Fitts, 51 Vt. 414.]

Under the undisputed evidence, it became a question of law for the court, and a direction to the jury to return a verdict for the plaintiff would have been proper. Affirmed. All concur.