OLIVER D. HICKS, Respondent, v. NATIONAL SURETY COMPANY, Appellant.

Kansas City Court of Appeals, February 17, 1913.

1. **PRINCIPAL AND SURETY: Contracts: Damages.** Where one signs an application to a surety company on its blanks to obtain surety on a bond sent with the application, and in which application the applicant pays the advanced fee required, and agrees, if the bond is accepted by the company, that he will pay the full premium required in advance, and that during the term for which the bond is wanted he will not obtain surety elsewhere, and said application and bond are sent by mail to the State agent of the company who writes that he has received them and they have been sent to a certain office of the company where the bond will be executed and filed with the parties for whom the bond is desired, such application and letter constitute a contract between the applicant and the company, the nature of which contract will depend upon the powers conferred by the company on the State agent.

2. ————: ————: ————. If the State agent has authority either to execute the bond or to order its execution at the place to which he sent it, then such application and letter constitute an express contract to execute and file the bond within the time required by the applicant. And for failure to comply with such contract the company is liable in damages to the applicant.

3. ————: ————: ————. If, however, the State agent has no authority to execute or to direct its execution, then the receipt and sending on of the application and the writing of the letter raise an implied contract that the company will either accept and execute and file said bond within the time required, or that the company will, on refusal to execute the bond, notify

the applicant of its refusal within a reasonable time after receiving the application. Whether the company is, under such a contract, liable to the applicant for failure to comply therewith depends upon the facts. If it accepted the bond and then neglected to execute, or if it executed the bond and then failed to file it, the company is liable. If the company held it an unreasonable length of time without acting on it, or, if within a reasonable time after receiving the bond, the company refused to execute it, and could have notified the applicant in time to have enabled him to secure a bond elsewhere and the company failed to do so, then the company is liable.

4. ———: ———: ———: **Loss of Successful Bid.** Although the damage sued for is for loss of a government contract which is awarded to the lowest bidder under a system of submitted bids, yet the fact that the Postmaster General has the right to reject any bid does not preclude the plaintiff from recovery when it is shown that plaintiff was the lowest bidder, that the statute requires it to be awarded to the lowest bidder and that such rule is followed, and it does not appear that plaintiff was otherwise disqualified.

5. **CONTRACTS: Damages Recoverable.** To recover damages for a breached contract it is not necessary to show that the damages were inevitable but only that they were the natural and probable result of the breach and within the contemplation of the parties.

6. ———: ———: **Loss of Profits.** Nor is plaintiff denied recovery because the suit is for loss of profits. The loss is capable of certain and definite ascertainment. The income is fixed and the expense can be determined. There is nothing depending on the public favor, the state of the market or weather, or the business skill of the plaintiff. In fact the loss in this case is merely the difference between the cost of doing a thing and the price to be received for it.

7. ———: ———: ———. Nor should plaintiff be denied a recovery because the so-called profits are to arise out of a contract collateral or subordinate to the one breached. The rule is that, if the profits are reasonably certain of contemplation, and are within the contemplation of the parties to the breached contract, and the loss arises naturally and probably from the breach, then they are recoverable. Especially where, as in this case, the very object of the bond sought is to enable plaintiff to secure the contract the loss of which is sued for.

8. ———: **Ultra Vires.** Even if the agreement to file the bond was *ultra vires* either on the part of the company or the State agent, still the duty remained to return the bond to plaintiff reasonably soon after execution so that he might file it, or, if execution was refused, to notify him reasonably thereafter.

9. ————: ————. But it was not *ultra vires* for the company to agree to file the bond since its filing was necessary to its becoming effective. Whether it was *ultra vires* for the State agent to agree to execute and file would depend upon the extent of his powers.

10. ————: ————: **Pleading.** The defense of *ultra vires* to be available must be pleaded.

11. **AGENCY: Apparent: Power of Agent.** The rule is that, as to third persons dealing with an agent, the principal is bound to the extent of the apparent authority conferred upon him; but this rule cannot be invoked where the agent tells the one with whom he is dealing that he has no authority. If the agent in fact had authority to execute and file the bond, his statement that he had no authority would not destroy a contract made by him that it would be executed and filed elsewhere.

Appeal from Livingston Circuit Court.—*Hon. Arch B. Davis,* Judge.

REVERSED AND REMANDED.

*Scott J. Miller* and *Frank Hagerman* for appellant.

(1) An agreement to file the bid was *ultra vires,* and hence, a breach thereof could not be made the ground for damages. Bank v. Pirie, 27 C. C. A. 171, 82 Fed. 799; Liggett v. Bank, 233 Mo. 590, 606. Moreover, the bid could not be filed without the bond, which was never execeuted. The contract relied upon must be confined to the alleged agreement to execute the proposal bond. (2) The proof is that there was no oral agreement of the character alleged. (3) Under the statute (R. S. 1909, sec. 2785) the contract must have been in writing signed by an authorized agent. Liggett v. Bank, 233 Mo. 590. The letter of P. O. Draper was the alleged writing, but there was neither proof of authority in Draper to execute same nor that he did execute it. It was, on its face, insufficient to show a contract, and could not be pieced out by out-

side evidence.  Reigart v. Coal Co., 217 Mo. 142, (4).
There was no direct causal relation shown by the peti-
tion or proofs between the alleged breach of contract
and the damages actually recovered.  The damages
claimed were only the profits which would have been
made if the contract had been awarded to plaintiff.
These, to be recovered, must have been the direct re-
sult of the breach of the contract.  Trust Co. v. Stew-
art, 115 Mo. 236.  That they were not such direct re-
sult is clear from the evidence.

*James E. Watkins* and *Paul D. Kitt* for respond-
ent.

(a)  When one having the right to accept or re-
ject a transaction takes and retains benefits thereun-
der, he becomes bound by the transaction and cannot
avoid its obligation or effect by taking a position in-
consistent therewith.  And a person by accepting the
benefits is estopped from questioning the existence,
validity and effect of a contract.  16 Cyc. 787; Light
v. Railroad, 89 Mo. 110.  (b)  Damages for loss of
profits are not susceptible of exact proof.  They are
to be arrived at from the facts and circumstances,
characterizing the transaction out of which they ac-
crue; and if the evidence is such as to enable the trier
to make a fair and reasonable estimate of them they
are recoverable.  Hendrix v. Railroad, 107 Mo. 140;
Stewart v. Patton, 65 Mo. App. 24; Wakeman v.
Wheeler Mfg. Co., 101 N. Y. 205; Brokerage Co. v.
Campbell, 147 S. W. 550.  (c)  The fact that the ob-
taining of the contract is contingent, that is, depends
on the concurrence of circumstances subsequently to
transpire, and which may by possibility not happen, is
not an insuperable objection to recovery of damages
for such loss.  The nature of the contingency must be
considered.  And if there is proof tending to show
that it would happen and sufficient to satisfy the trier

this is all that is required. 1 Sutherland on Damages, 126. (d) Appellant cannot avoid liability by showing that respondent's loss might have happened even though appellant had done as agreed. 8 Am. and Eng. Enc. Law (2 Ed.) 608; Lumber Co. v. Water Supply Co., 89 Ky. 340, 25 Am. St. Rep. 536.

TRIMBLE, J.—Plaintiff sued and recovered damages for loss of a government contract to carry the mails between the stations and post office in Chillicothe.

The facts are these: The U. S. Government, desiring to let the contract for carrying the mails in Chillicothe for a term of four years, advertised for bids therefor. Under the advertisement all bids were to be submitted on government blanks accompanied by a bond in the sum of $3000 signed either by an approved surety company or by two or more personal sureties, in which last event, such personal sureties must be approved by the postmaster. No bid would be considered which did not have such a bond accompanying it, and all bids must be filed with the department in Washington by 4:30 p. m. of December 6, 1910. The right was reserved to the Postmaster General to reject all bids whenever in his judgment the interests of the service required it.

Plaintiff, a young man twenty-two years old, desiring to submit a bid, obtained the proper government blanks for that purpose and took them to the defendant's local agent, Douglass Stewart, at Chillicothe, and there executed a written bid offering to carry the mail for $1485 per year. He also signed the bond for $3000 attached to said blanks. He then signed a written application to the defendant to become his surety on this bond accompanying the bid, paid $10 on the premium, and agreed in the application that in consideration of the defendant acting as surety for him he would, in case his bid was accepted by the Govern-

ment, send his contract in duplicate to the defendant; that he would at that time forward the premium for the entire term in advance and would not obtain any surety other than the defendant for any reason whatsoever. In this application the defendant reserved the right to decline the application, return the premium paid, and to withhold the reason therefor if deemed necessary and at the top of said application, in prominent red ink, was the following: "Send this to Mail Transportation Department. National Surety Company, 115 Broadway, New York."

The local agent had no authority to execute the bond, of which plaintiff was well aware, but he received the bid, bond and application, and, after helping plaintiff to fill out and execute them, sent them by mail to defendant's State agent or general State agent at Kansas City, a Mr. P. O. Draper. These papers were prepared and sent to Draper on November 28 or 29, 1910. On the second day following, the local agent received from Draper a letter, which omitting defendant's letter head, is as follows:

"Kansas City, Mo. November 30, 1910.
Mr. Douglass Stewart,
            Chillicothe, Mo.
Dear Sir:

Re Oliver D. Hicks, Bidder Screen Wagon Service Route No. —— at Chillicothe, Mo.—$3000. Bid $1,485 anuually:

Yours of the 28th inst: I have forwarded the papers to Washington office for execution, as they cannot be executed here. Our Washington office takes care of all details and will execute and file the bond. You will of course remit the premium collected less your commission when making remittance for this month's business.

                        Very truly yours,
                            P. O. DRAPER,
                                    Agent,"

The local agent showed this letter, on the day it was received, to plaintiff's father, who, fifteen minutes later, told plaintiff of its contents. Before this letter came the postmaster had suggested to plaintiff that, as the time was short, he had better make sure of his bond promptly. Thereupon plaintiff's father made arrangements with two personal sureties to sign a bond and got the postmaster's consent to approve them, as required by the regulations in case of personal sureties. As soon, however, as the above letter came, the arrangement to get these two sureties was dropped as plaintiff relied on the statement in the letter that the Washington office took care of all details and would execute and file the bond.

No further notice was received from defendant in regard to the matter, and plaintiff, thinking his bond had been executed and filed with the department, waited to hear the Government's announcement of the successful bidder, which would be made public on or before January 18, 1911. Sometime after December 6, 1910, the time limit for filing bids, plaintiff read in a paper that the bid had been awarded to another at $1540 per year, $55 higher than his bid. He then discovered that neither his bid nor bond had ever been filed with the department and went to the local agent to ascertain why they had not been filed. The local agent, not having heard anything, wrote to Draper, the State agent, about it. Draper answered, but his letter was never put in evidence. The local agent in his testimony attempted to tell what Draper wrote, but, on a suggestion of plaintiff's counsel, the court remarked that what passed between Draper and the local agent would not bind the plaintiff, and thereupon the defendant saved an exception but did not further offer to prove, by offering Draper's letter or otherwise, what was done with the application for bond and the bid. Whether defendant accepted said application and then neglected to execute said bond, or ex-

ecuted said bond and then afterwards neglected to file the bid and bond with the department, or whether it declined said application and refused to execute said bond, does not appear in the evidence. It is shown by the testimony of the Second Assistant Postmaster General that neither bond nor bid was ever filed; that the contract was awarded to another at $1540 per year, it being the lowest bid; that the National Surety Company was an approved surety at the time the bids were offered; that if plaintiff's bid in the sum of $1485, accompanied by a bond signed by the defendant had been filed in due form, it would have been received and considered with the other bids, and, so far as the official knew, an award would have been made to plaintiff if he were not disqualified by some statute to receive the service. He further testified that "The law provides that awards shall be made to the lowest bidder offering sufficient guaranties for the faithful performance of the service, and that rule is followed."

As stated at the outset, the suit is for damages for loss of a government contract. Plaintiff's failure to secure the contract is alleged to have been caused by the defendant's undertaking and agreement, and its subsequent failure, to execute and file in the Post Office Department in Washington a bond required to be filed with plaintiff's bid in time for the bid to be considered, or, if defendant refused to execute, to notify plaintiff of said refusal reasonably thereafter in time to have enabled plaintiff to secure a bond elsewhere and file it with the department before the time limit expired. While the petition is not thus worded in any one paragraph yet we think that, taking it as a whole, this is the basis of its complaint against defendant. If in fact the defendant refused to execute said bond and thereafter failed to notify plaintiff of its refusal, its reception of said bond and its opportunity of refusal must be alleged and shown to have been reasonably far enough in advance of the Government time limit

to enable defendant to notify plaintiff of its refusal to execute said bond *in time for the latter to secure another bond and file it* with the department before the expiration of the limit set. The allegations of the petition seem to state, or admit inferentially, that the defendant company after receiving the papers from Draper, the State agent, refused to execute the bond. If the bond was refused, said fact was not communicated to plaintiff nor offer made to return the $10 until long after the time for filing bids had expired. While it is not exactly clear, yet the theory of the petition, and the one on which plaintiff very likely tried the case, seems to be that Draper's letter of November 30th constituted an acceptance of the application and an agreement on the part of defendant to execute and file the bond and bid by 4:30 p. m., December 6, 1910, and that the application together with the letter constituted a contract which was broken by the company's subsequent refusal to execute the bond and its failure to notify plaintiff. The petition may mean, however, that the company, on receiving the application *at the place where the bond could be executed,* become bound to either execute and file the bond, or else, if the bond was declined, to notify plaintiff of its refusal in time to enable him to file another bond. If that is the meaning, of course the evidence must show, if plaintiff is otherwise entitled to recover, that the company itself, not Draper, the agent, received the application and refused the bond and could have notified plaintiff of that fact in time to enable him to file another bond by the time limit. If Draper's acceptance was an agreement, *binding on the company,* to execute and file the bond, there was ample time to notify plaintiff. If, however, it was the company's failure to notify, after refusal to execute at Washington, it is very doubtful whether such notification, if it had been given, could have reached plaintiff in time for him to file another bond.

But it will not be necessary to determine just what the petition does mean if defendant's main contention is found to be valid, namely, that plaintiff is no event is entitled to recover. That contention seems to rest upon an objection having two grounds, namely: 1st, as the Postmaster General had the right to reject all bids, it cannot be said that, if plaintiff's bond and bid had been filed, he would have obtained the contract; 2nd, that the damages sued for are for loss of profits which plaintiff might have made had he obtained the contract; hence no damages are recoverable because too remote, uncertain, speculative and contingent. But can it be said that merely because the Postmaster General had the power to reject all bids this destroys all right of action in plaintiff? This case is not like those where a plaintiff sues for damages caused by loss of the chance of entering a contest and competing for a prize. There it is *wholly problematical* whether the person would have sufficiently excelled the other contestants in skill or ability to have deserved the prize, and, even if he had, whether those awarding it would have considered him deserving of it. In other words, as stated in many of these cases, there is nothing to show *any probability,* or the *least probability,* of the excluded contestant being successful, and on this ground the plaintiffs were denied a recovery or else were limited to nominal damages only. But, in the case at bar, the law required the contract to be let to the lowest bidder. [Sec. 3949, vol. 5 Fed. Stat. Am., p. 883.] And the rule of the department was to let it to the lowest bidder. The carrying of the mails from the post office to the depot required no high degree of personal skill or professional ability. Personal attention would be all a young man twenty-two years old would have to give in order to do it. His ability otherwise would be covered by the surety given. And, under the evidence, if this bond and bid had been filed, the department would have followed the usual

course required by law and awarded plaintiff the contract, and there is nothing in evidence to the contrary. So that in this case, instead of there being *no* probability of his being successful, the evidence shows that according to the reasonable, natural and usual course of events he would have obtained the contract had his bid and bond been filed. And the mere contingency of the Postmaster General rejecting it is itself too remote to destroy all right of recovery when we consider that the law required it to be let to the lowest bidder and that rule was followed. In order to recover for a breach of contract one does not have to show that the damages were inevitable but only that they were the natural and probable result of the breach and within the contemplation of the parties. [Mellong v. Telegraph Co., 72 Mo. App. 111, 8 Am. & Eng. Ency. of Law (2 Ed.), p. 582.] And that too even though they may be to some extent contingent. [Stewart v. Lanier House Co., 75 Ga. 598. ] That an advantage to be derived from a contract is contingent is not an insuperable objection to recovery for its loss. The nature of the contingency must be considered. If it is purely conjectural and cannot be reasonably anticipated to happen in the usual course of things it is too uncertain. But if there is proof legally tending to show and sufficient to satisfy the jury that the contingency would happen, this is sufficient. [Sutherland on Damages (3 Ed.), vol. 1, p. 226.]

But should a recovery be denied on the second ground above mentioned i. e., because the damage is for loss of profits? On this feature it must be remembered that in this case the profits in question are not like those arising out of a business that is itself uncertain and dependent for success upon many unknown and conjectural elements. In the case at bar the profits did not depend on the favor of the public, the state of the market or weather, the business ability and judgment of the plaintiff, the amount of competition,

or any of these things. The income was fixed and known—$1485 per year, and absolutely certain because paid by the Government. The work to be done was almost menial, requiring no high degree of skill or judgment. Any young man, with sense enough to go at stated intervals each day to and from the post office and depots, and with strength enough to handle the mail bags, could properly do the work. And the expense he would incur, or would be likely to incur, could be certainly and definitely ascertained. So that, given a fixed and certain income and a definite expense, it would be only a matter of mathematical calculation to arrive at the profits. There would be nothing inherently uncertain, conjectural or speculative about them.

Now, in the cases denying recovery for loss of profits, it will be found that the denial of recovery is based on one of two grounds and sometimes on both, namely, 1st, because the profits were *inherently* uncertain, conjectural and speculative in character, or 2nd, because they were not deemed to have been within the contemplation of the parties to the contract for the breach of which damages were asked. Stated differently, the damages were refused on the first ground because they were not susceptible of proof, and on the second because they were outside of the legitimate scope of the breached contract. For authorities denying recovery on the first ground see 8 Am. & Eng. Ency. of Law (2 Ed.), p. 616, and cases cited; Callaway v. Clark, 32 Mo. 1. c. 309, and many others; and on the second ground, or both, see Abbott v. Gatch, 13 Md. 314; Brigham v. Carlisle, 78 Ala. 249; Fell v. Newberry, 106 Mich. 542; Simmons v. Brown, 5 R. I. 299, 305; Griffin v. Colver, 16 N. Y. 489. Again, as above indicated, while the loss might be termed a loss of profits yet, strictly speaking, in this case the *profits* are really nothing more than the difference between the cost of doing a thing and the price to be received

for it. "Wherever profits are spoken of as not a subject of damages, it will be found that something contingent upon future bargains or speculation, or states of the market, are referred to, and not the difference between the agreed price of something contracted for and its ascertainable value or cost." [Phila. Ry. Co. v. Howard, 13 How. (U. S.) 344.]

Nor is plaintiff in this case to be denied a recovery because the profits sued for are profits to arise out of a contract collateral or subordinate to the one breached. Because the rule in such case is that if the profits are reasonably certain of computation and are within the contemplation of the parties to the breached contract and the loss thereof arises *naturally* and *probably* from the breach, then they are recoverable. [8 Am. & Eng. Ency. of Law (2 Ed.), p. 623-4; Wallace v. Ah Sin, 71 Cal. 197; Wapoo Mills v. Commercial Guano Co., 91 Ga. 396; Fox v. Harding, 7 Cush. l. c. 523; Fairchild v. Rogers, 32 Maine l. c. 270-271; Trigg v. Clay, 88 Va. l. c. 335.] And especially is this true in this kind of a case where the *very object* and purpose of the dealings between plaintiff and defendant is to *enable* the former to *secure* the contract which was lost. [8 Am. & Eng. Ency. of Law (2 Ed.), p. 622, and cases cited.] Here, the plaintiff, in an application made on blanks furnished by defendant, applied to defendant to become his surety, paid the required advance payment, agreed to pay the full premium required on the whole term, and agreed that he would not have any other surety. The application is accompanied by papers which show that plaintiff's purpose in seeking surety is to enable him to secure a certain contract, and that his bid and bond must be filed with the department by a specified time else it will be unavailing. To say that defendant can receive such application and then fail to either act on it or notify plaintiff in time for him to secure another bond, and that when it does so fail, defendant under any

and all circumstances can escape liability by showing that by reason of some imaginable but not probable human possibility, plaintiff might not have secured the contract, is to practically release all surety companies from the consequences of their negligent inaction.

It is also urged that no right of recovery exists because the filing or agreement to file the bond with the department is *ultra vires*. If so, the duty still remained to return the bond, reasonably soon after execution, to plaintiff that he might file it, or, if execution was refused, to notify him of that fact reasonably thereafter. It certainly was not *ultra vires* for either the agent or the company to receive the application for the purpose of enabling the company to pass on it either by executing the bond or declining the risk. But was it *ultra vires* to file or to agree to file the bond? Certainly not for the company to do so, since the filing of the bond was not something outside of and beyond its scope, but a thing necessary to be done before the bond would become effective. Hence the filing was within the implied powers of the company, not indispensably necessary to carry into effect the purpose of its corporate existence, but certainly appropriate, convenient and suitable, and a reasonable choice of means to that end. [10 Cyc. 1097.] Whether it was *ultra vires* for the State Agent Draper, to agree to execute and file the bond would depend upon the extent of the powers conferred upon him by the company. However, the defense of *ultra vires* was not pleaded, as it must be to be available. [Williams v. Verity, 98 Mo. App. 660, 10 Cyc. 1156; Lumber Co. v. Lumber Co., 152 Mo. App. 386.] In view of the foregoing, the damages under the peculiar circumstances of the case are not remote, uncertain or speculative, but are the natural and probable result of the alleged breach, and reasonably within the contemplation of the parties. If then the alleged contract and its breach have been

properly proved, such damages are recoverable.

Was the contract properly proved? Before answering this, it will be well to ask: First, what is it that is relied upon to constitute the contract; second, what is the contract? The acts relied upon to constitute the contract are: Plaintiff's application and his agreement therein, the payment of the $10, and Draper's letter of November 30th receiving the whole thing and saying he would send it all to Washington for execution and filing. Now, if it were not for the statement in the letter that "the papers cannot be executed here" this might perhaps constitute a good contract on the part of the company *to execute and file the bond,* even if Draper had no actual authority to execute the bond, since it is the rule that as to third persons dealing with an agent the principal is bound to the extent of the apparent authority conferred and not by the actual or express authority only. [Law Rep. Co. v. Elwood Grain Co., 135 Mo. App. 10.] But this rule cannot be invoked by plaintiff because the above quoted clause of the letter removes from the agent all appearance of authority to execute, and leaves him with only the authority he actually had, if any. [Typewriter Co. v. Realty Co., 165 Mo. App. 138.] So that, unless the agent actually had authority to execute the bond or to accept it and direct its execution at Washington, there is not shown any contract to execute and file the bond. It cannot be said with certainty that because Draper's letter says "the papers cannot be executed here" therefore Draper necessarily had no power or authority to accept said bond and direct its execution and filing in Washington. There may have been other reasons why the bond must be *executed* in Washington aside from a lack of power in Draper to execute. The letter also says "the Washington office takes care of all details and will execute and file the bond." If Draper did in fact have authority to accept said bond and direct its filing and execu-

tion, his statement that it could not be executed in Kansas City, would not take away his authority nor destroy the contract he made, that it would be executed elsewhere. If, therefore, plaintiff's petition declares on a contract made by the agent to execute and file the bond and a failure to do so, the case will have to be reversed and remanded for a new trial because, in the absence of evidence as to the agent's authority to make such a contract, there is no contract to execute and file shown. There were no declarations of law or findings of fact asked or given, and hence an appellate court cannot tell whether the learned trial judge rested the judgment on such a contract, or upon the implied contract that the company at Washington would either execute and file the bond or notify plaintiff of its refusal in time for him to get another bond. Of course if the application and letter created a valid express contract, there could be no implied contract. But even this rule applies only where the express and the implied contracts relate to the same subject-matter, and where the provisions of the express contract were intended to control and supercede those which would otherwise be raised by implication. [Com'l Bank v. Pfeiffer, 22 Hun (N. Y.), 327, 335.] But there is no room or occasion for the rule if there was no valid express contract that the company would execute and file the bond. So that, if, on account of an entire lack of power in Draper either to execute the bond or to direct its execution, there was no express contract by the agent to execute and file, it would seem that there is nothing to hinder the raising of an implied contract that the company in Washington would either accept the bond and file it or would notify plaintiff of its refusal to execute. Certainly Draper by virtue of his position as State agent, had power to receive said bond and transmit it to the company for acceptance or rejection, and thus could create an implied contract that the company would do one or the

other. 'And his agreement that, if the bond was accepted, it would be filed, is not *ultra vires* since the filing was necessary to its effectiveness and was the only means of making it so. But if plaintiff is relying upon an implied contract that the company would execute and file or would notify plaintiff of its refusal, then plaintiff's right to recover depends upon whether the facts were such as would render defendant liable. If the company accepted and executed the bond *in time* to file it and then neglected to file, defendant is liable. Or if it received said bond and rejected it soon enough to have notified plaintiff in time for the latter to have secured another and failed to do so, then defendant is liable. But there is no evidence when the company received said bond, nor that it had reasonable time in which to consider whether it would accept or reject; nor that, if plaintiff had been notified immediately upon the refusal to execute, such notification could have reached him in time to have enabled him to obtain another bond and file it by 4:30 of December 6th. The case will, therefore, have to be reversed and remanded for a new trial.

Objection was made to the introduction of the Draper letter on the ground that the signature was not proved. This objection could not prevail because it was already in evidence that Draper was the State agent, or general State agent, and that Stewart, the local agent, was under him; that Stewart had written to him sending the papers and received the letter in reply. This was sufficient to admit the letter without proof of the signature. [22 Am. & Eng. Ency. of Law (2 Ed.), 1256; Russell v. State Ins. Co., 55 Mo. 585, 588.] But the fact that defendant will be held to the specific objection made to the letter does not preclude it from making the objection at the close of the evidence (as it did by demurrer) that no power had been shown in Draper to agree that the bond would be executed. Whether the letter was admissible in evidence

was one question. Whether, after its admission, plaintiff is entitled to the judgment rendered is another.

As stated before it is not exactly clear whether the petition relies, and recovery was had, upon an express contract made by the Agent Draper that the bond at all events would be executed and filed, or on the implied contract that the company would either execute and file or notify plaintiff of its refusal. It would seem that this should clearly appear.

Defendant insists that it was error to admit evidence that the personal sureties had agreed to go on plaintiff's bond. Since the case is to be remanded it is not necessary to pass on this question. It would be better, however, to show that the surties possessed the required qualifications and that they would have gone on the bond rather than to merely show, by some one else, that they *said* they would.

For the reasons heretofore given, the case is reversed and remanded for a new trial. All concur.