MAGNOLIA COMPRESS & WAREHOUSE COM-
PANY, Respondent, v. ST. LOUIS CASH REGIS-
TER COMPANY, Appellant.

St. Louis Court of Appeals. Opinion Filed March 4, 1919.

1. CORPORATIONS: Principal and Agent: Authority of General
Manager to Execute Note: Question for the Jury. Under section
9990, Revised Statutes 1909, which provides that the signature
of a party may be made by a duly authorized agent, and requir-
ing no particular form of appointment necessary for the purpose,
etc., where the corporation's note sued on was executed and signed
by its general manager, *held* that the authority of the general
manager to execute such note, under the circumstances, was a
question for the jury.

2. ———: ———: ———: Evidence: Sufficiency. In an action against
a corporation on a promissory note, evidence *held* to warrant the
conclusion that the manager who signed and executed the note
acted within the apparent scope of his authority, and, under such
circumstances, the act of the agent is binding upon his principal.

3. ———: ———: ———. The term "general manager" implies
very broad powers, but whether such officer has authority to bind
the corporation by notes and other like instruments executed by
him in its name depends on the circumstances of the case.

4. ———: ———: Tender: Estoppel to Deny Agency. If a corpora-
tion proposed to disavow the act of its agent in executing a note,
etc., it was its duty to promptly return or tender back the bene-
fits received.

Appeal from the Circuit Court of the City of St. Louis.
—*Hon. William T. Jones,* Judge.

AFFIRMED.

*Rassieur, Kammerer & Rassieur* for appellant.

(1) The plea of *non est factum* in defendant's
verified answer cast the burden on plaintiff of establish-
ing the authority of the persons who executed the note
in defendant's name, in order to hold defendant liable
thereon. Proof that one of the persons who signed the

note held the office claimed by him on the paper, was not sufficient, and the note should not have been admitted in evidence. Sanders v. Chartrand, 158 Mo. 353; Dreeben v. First Nat. Bank, 99 S. W. 850; First Nat. Bank of Kansas City v. Hogan, 47 Mo. 472; Blain & Kelly v. Express Co., 69 Tex. 74. (2) Neither the secretary nor the managing agent of a corporation has implied power to bind the corporation by executing negotiable paper; and where the power is claimed, it must be sought for in some special authorization, or in such a continued exercise of it as amounts to a holding out by the corporation, thus raising the implication of a previous authorization or a subsequent ratification. 10 Cyc. 929; 2 Corpus. Juris. 636, sec. 280; First Nat. Bank of Kansas City v. Hogan, 47 Mo. 472; Fayles v. Nat. Ins. Co. of Hannibal, Mo., 49 Mo. 380; Stothard v. Aull, 7 Mo. 318; Shawhan v. Shawhan Distilling Co., 197 S. W. 371; Sanders v. Chartrand, 158 Mo. 353; Hyde v. Larkin, 35 Mo. App. 365; New York Iron Mine v. Bank, 39 Mich. 644; Sanford Cattle Co. v. Williams, 18 Colo. App. 378; McCullough v. Moss, 5 Denio 567; The Floyd Acceptances, 7 Wall 666. (3) The evidence was insufficient in law to support a verdict, and the instructions in the nature of demurrers to the evidence should have been sustained. Sanders v. Chartrand, 158 Mo. 353; Alton Mfg. Co. v. Biblical Inst., 243 Ill. 298. (4) The scope of an agent's authority cannot be shown by his own acts, when they have never come to the knowledge of the principal. Alt. v. Brosclose, 61 M. A. pp. 409; Sanders v. Chartrand, 158 Mo. 353; Hyde v. Larkin, 35 M. A. 365; Dreeben v. First Nat. Bank, 99 S. W. 850; Farrar v. Kraemer, 5 M. A. pp. 167; Williams v. Edwards, 94 Mo. 447. (5) Instructions 1 and 2, given over defendant's objection, the first on behalf of plaintiff and the second of the court's own motion, constituted error, because the jury was left at liberty to judge whether O'Hara was held out to the public as having the power to executed negotiable papers, without an instruction defining what

would constitute such a holding out. Cases cited under foregoing points.

*Fordyce, Holliday & White, Garber & Garber* for respondent.

The judgment in this case should be affirmed. The only question involved is whether the note was executed for the corporation by one having actual or apparent authority to sign it, and this issue was properly left to the jury under appropriate instructions, and their verdict was amply supported by the evidence. Sec. 9990, R. S. 1909; Ruhe v. Buck, 124 Mo. 178, 183 et seq.; Edwards v. Thomas, 66 Mo. 468, 482-3; Higbee v. Bank, 244 Mo. 411, 426-7; Mosby v. McKee, 91 Mo. App. 500, 504-5; Johnson v. Hurley, 115 Mo. 513, 523; Law Reporting Co. v. Grain Co., 135 Mo. App. 10, 13-14-15; Sublette v. Brewington, 139 Mo. App. 410, 415; Settles v. Moore, 149 Mo. App. 724; Robinson v. Mining Co., 178 Mo. App. 531, 539-40; Meux v. Haller, 179 Mo. App. 466, 473; Phillips v. Railroad, 211 Mo. 419, 441.

ALLEN J.—This is an action on a promissory note for the sum of $2638.35, of date November 7, 1914, due one hundred and twenty days after date, with six per cent. interest from the date thereof, executed in the name of the defendant corporation to the order of Warrant Warehouse Company, a corporation, and which was endorsed and transferred to the plaintiff, the payee. The instrument is signed: "St. Louis Cash Register Company, J. G. R. O'Hara, Sec'y. & Mgr., E. O'Brien, Act. Treas."

The verified answer of defendant contains (1) a plea of *non est factum,* averring that the note was executed by agents of defendant who were wholly unauthorized so to do, and whose said act was never approved or ratified by defendant; (2) a plea of failure of consideration; (3) and a plea to the effect that plaintiff is not a holder in due course.

The trial, before the court and a jury, resulted in verdict and judgment for plaintiff, and the defendant appeals.

In the year 1914 the defendant, a Missouri corporation with headquarters at the city of St. Louis, was engaged in manufacturing and selling cash registers. One J. G. R. O'Hara was secretary and general manager of the company, the other officers and the directors being business or professional men in the city of St. Louis engaged in other pursuits. The Warrant Warehouse Company, the payee in the note, and plaintiff, Magnolia Compress & Warehouse Company, were Alabama corporations, doing business in Birmingham; the former having a warehouse in Mobile, Alabama. These two companies were closely affiliated, having certain officers and directors in common, and one W. D. Nesbitt being president of both companies.

One Herck was engaged in selling, in a certain territory in the southern part of the United States, cash registers manufactured by defendant. He is referred to in some of defendant's correspondence as defendant's district manager, but it is said that he merely bought machines from defendant which he sold on his own account. In any event, in the early part of 1914 he had a contract with defendant for selling its machines in said territory, and was operating under the same. In May, or early in June, 1914, Herck, with one Whipple, called upon Nesbitt, at the office of the Warrant Warehouse Company in Mobile, in regard to making arrangements with that company for the storing and forwarding of cash registers which Herck was handling under the contract with defendant. At the suggestion of Herck and Whipple, the Warrant Warehouse Company, through Nesbitt, wrote to the defendant concerning the matter, with the result that O'Hara, defendant's general manager, went to Mobile and had a conference with Nesbitt. On O'Hara's return to St. Louis defendant, through O'Hara as manager, wrote a letter to Nesbitt, under date of June 12, 1914, referring to the relations between the

defendant and Herck, and the proposed arrangement between the latter and the Warrant Warehouse Company. On that date also defendant, through O'Hara, wrote a letter to the Warrant Warehouse Company enclosing a financial statement from the St. Louis Cash Register Company as of June 1, 1914. On the following day the defendant, through O'Hara as manager, wrote a letter to Nesbitt setting out the names of the officers and directors of the defendant, showing them to be well known business or professional men in the city of St. Louis, and giving likewise a list of many of the principal stockholders of the company. These letters were signed: "St. Louis Cash Register Company, per J. G. R. O'Hara, Manager."

Thereafter a contract was prepared by the Warrant Warehouse Company, between Herck, operating under the name and style of "St. Louis Cash Register Distributing Company of Mobile," party of the first part, and defendant, party of the second part, and the Warrant Warehouse Company, party of the third part. This contract was executed by the parties under date of June 27, 1914, and was signed in behalf of defendant in the latter's corporate name by O'Hara as secretary and manager. We are not concerned with the details of this contract, and it is sufficient to say that it made provision regarding the shipment of cash registers by defendant to Herck, the receiving and storing thereof by the Warrant Warehouse Company, and the forwarding thereof on orders of Herck; and provided also that when cash registers amounting to a certain sum in value (or mortgaged notes received in payment for cash registers sold and delivered by Herck, of said amount) had been deposited with the Warrant Warehouse Company, that company would then undertake to negotiate a loan for Herck on additional mortgage notes of the same character, to the extent of $3,000, during the sixty days following the execution of the contract, and if collections on said notes were satisfactory then to extend such loans to a total of $5,000.

During August, September and October, 1913, there was much correspondence between Nesbitt and the defendant, the latter acting almost entirely through O'Hara, its general manager. This correspondence grew out of the fact that it was found that Herck had deposited with the Warrant Warehouse Company notes said to have been fraudulently obtained, upon forged signatures, and upon which he had borrowed money from that company. Herck, it is said, disappeared, leaving much confusion behind him.

After much correspondence with defendant, Nesbitt, on October 21, 1914, wrote a letter to defendant enclosing the note in suit, which represented the balance due on account of the loan made by the Warrant Warehouse Company to Herck on the notes aforesaid. Thereafter defendant, through O'Hara, as manager, wrote the Warrant Warehouse Company to the effect that defendant would execute this note if the warehouse company would turn over to defendant for collection the so-called "Herck notes," i. e. the notes which Herck had delivered to the Warrant Warehouse Company purporting to have been executed by purchasers and secured by mortages upon cash registers, together with certain cash registers remaining in the warehouse of the Warrant Warehouse Company; and that defendnt would apply upon this note whatever was collected on the Herck notes, and at the maturity of the note in suit defendant would execute a new note for the balance then remaining due, which defendant would pay at maturity. This was agreed upon, and Nesbitt, for the Warrant Warehouse Company, sent these Herck notes to the defendant, and the note in suit was executed, in the manner aforesaid, and mailed by O'Hara to the Warrant Warehouse Company. Thereafter Nesbitt informed defendant that the payee desired to use this note at a bank, and that this could not be done unless the cash registers were retained for the time being in its warehouse; and defendant, through O'Hara, consented to this arrangement by letter of date November 13, 1914.

Subsequently the note was transferred by the payee therein, the Warrant Warehouse Company, to this plaintiff, for money, it is said, advanced by plaintiff to said payee. At the maturity of the note defendant refused to execute a new note except upon condition that its liabilty be limited to the amount which might thereafter be collected upon the Herck notes remaining in its hands. Plaintiff thereupon instituted this action.

The by-laws of defendant company were introduced in evidence by plaintiff. They contained no provision conferring express authority upon any officer or officers to execute contracts, notes, bills checks, etc. Plaintiff also offered in evidence the minutes of a meeting of defendant's board of directors on March 5, 1912, showing that by resolution of that date the board, in accordance with authority conferred upon it by the by-laws, created the office of general manager, whose duty it should be "to have general supervision of the practical work of the company and its factory," etc. Minutes of other meetings of the board were offered in evidence showing the appointment of O'Hara as general manager of the company, and fixing the amount of his salary.

Such further reference to the evidence adduced as may appear to be necessary will be made in the course of the opinion.

The only question before us relates to the authority of O'Hara, as defendant's general manager, to bind defendant by the execution of the note in its name, under the circumstances shown in evidence. It is the contention of learned counsel for defendant, appellant here, that defendant was not bound by O'Hara's act in executing the note; and that consequently the court erred in admitting the instrument in evidence, over defendant's objections, and in overruling defendant's demurrer to the evidence.

It is not contended that O'Brien had any authority to execute the note. There is no proof of such authority, or, indeed, that he was authorized to act as treasurer. Plaintiff's case proceeds upon the theory that, under the circumstances shown in evidence, the act of

O'Hara in executing the note, as defendant's manager, was the act of the defendant corporation. The trial court took the view that the evidence adduced made the case one for the jury, and submitted it under in-structions which required the jury to find, in effect, that defendant conducted its business, or permitted O'Hara to conduct it, in such manner as to induce one dealing with it under the circumstances, and while in the exercise of reasonable diligence and caution, to believe that O'Hara as secretary and manager, had power and authority to execute the note in defendant's name and behalf; and that defendant either knew that its business was so conducted or by the exercise of reasonable diligence would have known thereof.

The question before us is one to be determined by our law [Ruhe v. Buck, 124 Mo. 178, l. c. 183, 27 S. W. 412]. Section 9990, Revised Statutes 1909, in force at the date of the execution of the note, provides as follows:

"The signature of any party may be made by a duly authorized agent. No particular form of appoint-ment is necessary for this purpose, and the authority of the agent may be established as in other cases of agency."

The question as to O'Hara's authority, then, is one to be determined by the general law or principal and agent, as applied to corporate acts. The evidence shows that defendant made O'Hara its general manager and placed him in charge of the practical work of the company, the other officers of the company and its directors, being engaged in other pursuits and not de-voting their time to the practical conduct of its business and affairs; and it is made to appear that in the transactions leading up to the execution of the note, conducted by rather voluminous correspondence between the parties, extending over a period of some months, defendant acted almost entirely through O'Hara. Nu-merous letters addressed by Nesbitt to defendant in its corporate name were replied to by O'Hara, and in reliance upon the authority thus apparently vested in

O'Hara, by defendant, the Warrant Warehouse Company entered into the arrangement with defendant which involved the execution and delivery to it of this note, and thereafter accepted the note executed in the manner aforesaid. Under the circumstances we think that the case was one for the jury; that plaintiff was entitled to recover upon a finding by the jury of the facts in plaintiff's favor under the instructions mentioned above. The evidence warrant the conclusion that O'Hara acted within the apparent scope of his authority; and under such circumstances the act of the agent is binding upon his principal. [Sublett v. Brewington, 139 Mo. App. 410; 122 S. W. 1150; Meux v. Haller, 179 Mo. App. 466, and cases cited, 162 S. W. 688.] In the case last cited, we said:

"The existence of the agency, or the extent of the agent's authority, need not be established by direct and positive proof, but may be inferred from facts and circumstances in evidence. and if there is any substantial evidence from which the agent's authority may be fairly and reasonably inferred, the question is one to be referred to the jury. [See McCloud v. Telegraph Co., supra; 170 Mo. App. 624, 157 S. W. 101; Distillery Co., v. Van Frank, 147 Mo. App. 204, 126 S. W. 222; Phillips v. Geiser Mfg. Co., 129 Mo. App. 396, 107 S. W. 471; Hackett v. Van Frank, 105 Mo. App. 384, 79 S. W. 1013; Heffernon v. Boteler, 87 Mo. App. 316; Bonner v. Lisenby, 86 Mo. App. 666; Harrison v. Railway Co., 50 Mo. App. 332; Cummings v. Hurd, 49 Mo. App. 139.] The authority of the agent may be implied from the course of dealing between the principal and the agent. [See McCloud v. Telegraph Co., supra, l. c. 630, 631, and cases cited.] And 'the scope of an agency is to be determined not alone from what the principal may have told the agent to do, but from what he knows or ought to know, in the exercise of ordinary care and prudence, the agent is doing in the premises.' [Law Reporting Co. v. Grain Co., 135 Mo. App. 10, 115 S. W. 475.]"

In Law Reporting Co. v. Grain Co., 135 Mo. App. 10, 115 S. W. 475, cited above, the principles here involved are discussed at length, and in making application thereof to the case in hand the court says:

"If Harroun, when he assumed to contract in the premises for his principal, went beyond his delegated powers, his act, nevertheless, bound his principal, on the ground that it had by its negligence and omission of duty permitted third persons to reasonably conclude that he was acting within the scope of the powers conferred. It was the duty of the defendant, in the exercise of ordinary care, to have known in what manner its agent was handling its correspondence."

In the case before us it is the authority of O'Hara to execute the note that is drawn in question, and not his authority to sign a letter; but in view of the fact that he was defendant's general manager, apparently clothed with authority to conduct its business generally, and was permitted to carry on this correspondence in a manner to induce the belief that he was authorized to bind the company by agreements made in its behalf in the premises, and to consummate the arrangement ultimately entered into between the parties by the execution of the company's note as previously agreed upon, we think that his act in so executing the instrument may properly be found to be the act of defendant. We do not say that O'Hara had implied authority to execute notes by virtue alone of his position as general manager; though in this connection it is to be noted that defendant's by-laws contain no provision lodging this authority in any particular officer or officers. Definitions of the term "manager," as applied to an officer of a corporation, will be found in Robinson v. Mining Co., 178 Mo. App. 531, l. c. 539, 540, 163 S. W. 885. That the term "general manager" implies very broad powers must be conceded; but whether such an officer has authority to bind the corporation by notes and other like instruments executed by him in its name, doubtless depends upon the circumstances of the case. [In this connection see Thompson on Corporations (2

Ed.). see 1585.] The facts of the instant case warrant a judgment in plaintiff's favor, we think, upon the ground that under all of the circumstances present the said act of defendant's general manager was one within the apparent scope of his authority.

The cases cited and relied upon by appellant are not persuasive, in view of the particular facts involved. In First Nat'l Bank v. Hogan, 47 Mo. 470, the suit was upon a draft executed by one Parker, the secretary of an insurance company, who, alone, had no authority to execute such instrument under the by-laws; and "apart from the by-laws there was no evidence tending to show authority in Parker to bind the company." In Sanders v. Chartrand, 158 Mo. 353, 59 S. W. 95, it was held that the secretary of a corporation had "neither authority nor apparent authority" to sign the president's name to notes. None of the other decisions of our courts cited by appellant are controlling upon facts such as those here involved, and if cases cited from other jurisdictions can be said to lend any support to appellant's contention they are without influence in view of the decisions of our own courts which appear to us to be in point.

In its reply brief appellant says that the letter written by defendant through O'Hara of date June 12, 1914, "advising the respondent of the policy adopted by the appellant company of discontinuing the acceptance of customer's notes precluded respondent from relying on the doctrine that a principal is bound by the acts of his agent to the extent of his apparent authority and required respondent, in case it relied on O'Hara's authority to issue a note in purchasing such paper, to prove that O'Hara actually possessed authority to do so." [Citing Hicks v. Nat'l Surety Co. 169 Mo. App. 479, 1. c. 493, 155 S. W. 71.] In this letter it is stated that defendant "had to discontinue" taking customers' notes because of the amount of capital which this required. Such statement could not have the effect ascribed to it by appellant; and a reading of the opinion in the Hicks case, cited in this·

connection, will disclose that the letter there involved was of quite a different character.

Finally, it is to be noted that defendant has retained whatever benefit accrued to it from the transaction involving the execution of the note in suit. Evidently some benefit accrued to it from the Herck notes, for it affirmatively appears that some collections were made thereon. Testimony for defendant tends to show that defendant's president did not learn of the existence of the note until "about a month or a month and a half" prior to the trial, though the suit had been then pending for some months. In any event, it was the duty of defendant to promptly return or tender back the benefits received, if it proposed to disavow the act of its agent.

The judgment is accordingly affirmed.

*Reynolds, P. J.*, and *Becker, J.*, concur.